Judge STUCKY
delivered the opinion of the Court.
We granted review to consider three questions surrounding trial counsel’s sentencing argument: (1) whether the argument constituted prosecutorial misconduct; (2) whether the military judge erred in failing to stop the argument and issue a curative instruction; *478 and (3) whether the defense counsel rendered ineffective assistance of counsel by failing to object to the argument. We hold that Appellant has not met his burden of showing that he was prejudiced by trial counsel’s arguments. We therefore affirm the decision of the United States Air Force Court of Criminal Appeals.
I.
In exchange for the convening authority’s agreement to refer this ease to a special court-martial, Appellant pled guilty to and was convicted of one specification each of failure to obey a lawful order, wrongful use of Adderall (a Schedule II controlled substance), adultery, and reckless endangerment, in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934 (2006). A panel of officer members sentenced Appellant to a bad-conduct discharge, confinement for ten months, and a reprimand. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals (CCA) affirmed. United States u Halpin, No. S31805, 2012 CCA LEXIS 43, at *18-*19, 2012 WL 377232, at *7 (A.F.Ct. Crim.App. Feb. 1, 2012) (unpublished).
II.
A.
At the time of the offenses, Appellant was a nineteen-year-old airman basic assigned to Davis-Monthan Air Force Base, Arizona. He was married to CH, but they were separated. On November 25, 2009, Appellant invited CH to the apartment where he was staying during their separation. When she arrived, Appellant had prepared dinner and they enjoyed a romantic evening together. Appellant and CH had sexual intercourse, and then began to argue. The argument escalated and Appellant told CH he wanted a divorce. CH became very upset, retrieved a bottle of the anti-depressant Lorazepam from her purse, and proceeded to swallow approximately sixty pills. Appellant watched CH swallow the pills, and told her “[Yjou’re not going to die in my apartment.” CH responded that Appellant was “going to watch [her] die.” Soon after the overdose, CH was unable to walk and her speech became heavily slurred. Appellant drove CH to her home, carried her inside, and put her to bed, placing his Air Force jacket on top of her before leaving. Appellant returned to his apartment and went to bed without calling for help for CH. The next morning a friend discovered CH, learned of the overdose, and called an ambulance. CH was treated in the emergency room and subsequently received five to six days of inpatient mental health treatment. Based on these events, Appellant pled guilty to recklessly endangering CH by taking her to her house and leaving her alone rather than seeking medical attention after observing her attempted suicide.
On the day CH was admitted to the hospital, Appellant engaged in consensual sex with another airman, A1C Hayden. After learning of CH’s suicide attempt and Appellant’s relationship with A1C Hayden, Appellant’s commanding officer issued no contact orders prohibiting Appellant and A1C Hayden from communicating with one another. However, Appellant continued to communicate with, see, and engage in consensual sex with A1C Hayden. On these facts, Appellant pled guilty to adultery and failure to obey a lawful order.
In his stipulation of fact, Appellant also admitted to crushing and snorting Adderall, a Schedule II controlled substance. CH had a prescription for Adderall, and Appellant took pills from her prescription without her consent. At various times he snorted the Adderall with another airman. On these facts, Appellant pled guilty to wrongful use of Adderall.
B.
The granted issues concern trial counsel’s closing arguments at sentencing. With regard to the reckless endangerment charge, trial counsel argued that
only [Appellant] himself knows why he acted in ... such a callous and wanton manner that night. And only he knows whether or not he was actually hoping or wanted *479 [CH] to die but one could certainly argue that this would have worked out pretty well for him if she had passed away. The arguments would stop. The impending divorce, expense and effort of it would be saved. Potentially, he could collect on her SGLI payout.
Trial counsel also described the scene at CH’s home when she was discovered the next day by her friend, covered by Appellant’s Air Force jacket, wearing the wedding rings she usually kept in her purse, with a pile of pill bottles on the dresser. Trial counsel asserted,
Now, there are no eyewitnesses to show that [Appellant] did that but it sure sounds like someone is trying to stage a scene, a scene of a grieving wife, pining after her estranged husband, alone, wearing her wedding ring, wrapped in his jacket, taking a whole slew of pills. Members, a scene like that would most likely go to show that [Appellant] wasn’t involved in that event. It would actually be pretty good for him if she was found like that. But again, there is no evidence to show that he did that.
With respect to the wrongful use of Adde-rall charge, trial counsel asked the panel a series of seven rhetorical questions. Among these, he asked why Appellant would want to “endanger the welfare of his wife who needed that drug to treat her depression?” and “why did he find the need to share that with another airman ... ?” He also queried why Appellant did not get his own prescription, why he snorted rather than swallowed the pills, and why he risked his military career.
Trial counsel also pressed the veracity of Appellant’s unsworn statement. In the un-sworn statement, Appellant asserted that many of his supervisors enjoyed working with him. Trial counsel responded to the unsworn statement by rhetorically asking the members, “Does anyone here actually buy that.” He then reminded the panel of Appellant’s letters of counseling, letters of reprimand, and Article 15s. See 10 U.S.C. § 815 (2006).
With regard to possible punishments, trial counsel argued that Appellant “should be punished by having neither the privilege of wearing [the Air Force] uniform nor an honorable service record.”
Trial defense counsel did not object to any of these arguments at trial, nor did the military judge take any action sua sponte. In his sentencing arguments, trial defense counsel presented Appellant as a troubled young man who did not know how to react and made an admittedly bad decision when his wife attempted to overdose. He implored the panel to consider Appellant’s rehabilitative potential and to render a sentence that would ensure that Appellant still had hope for his future.
C.
Appellant raised the same issues concerning trial counsel’s sentencing arguments before the CCA that he raises now. As Appellant did not object to the sentencing arguments at trial, the CCA reviewed for plain error and found that trial counsel’s sentencing arguments were not improper, and thus no prosecutorial misconduct, error by the military judge, or ineffective assistance occurred.
III.
During sentencing argument, “the trial counsel is at liberty to strike hard, but not foul, blows.” United States v. Baer, 53 M.J. 235, 237 (C.A.A.F.2000). As a zealous advocate for the government, trial counsel may “argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.” Id.
Because Appellant did not object to trial counsel’s sentencing arguments at trial, this Court reviews the propriety of the arguments for plain error. United States v. Marsh, 70 M.J. 101, 104 (C.A.A.F.2011). To prevail under a plain error analysis, Appellant has the burden of showing, inter alia, that the alleged errors materially prejudiced a substantial right. See id. (citing United States v. Erickson, 65 M.J. 221, 223 (C.A.A.F.2007)).
In this ease, our judgment does not depend on whether any of trial counsel’s *480 sentencing arguments were, in fact, improper. Rather, we conclude that Appellant has not met his burden of establishing the prejudice prong of plain error analysis. “In assessing prejudice under the plain error test where prosecutorial misconduct has been alleged: ‘[W]e look at the cumulative impact of any prosecutorial misconduct on the accused’s substantial rights and the fairness and integrity of his trial.’ ” Erickson, 65 M.J. at 224 (quoting United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F.2005)). In Fletcher, where the issue was the government’s findings argument, we explained that the “best approach” to the prejudice determination involves balancing three factors: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” 62 M.J. at 184. In applying the Fletcher factors in the context of an allegedly improper sentencing argument, we consider whether “ ‘trial counsel’s comments, taken as a whole, were so damaging that we cannot be confident’ that [the appellant] was sentenced ‘on the basis of the evidence alone.’ ” Erickson, 65 M.J. at 224 (quoting Fletcher, 62 M.J. at 184). In this case, considering the cumulative impact of any allegedly improper arguments in the context of the trial as a whole, we find that the third Fletcher factor weighs so heavily in favor of the Government that we are confident that Appellant was sentenced on the basis of the evidence alone.
With respect to the third Fletcher factor, the weight of the evidence amply supports the sentence imposed by the panel. Appellant failed to establish that the Government’s sentencing argument prejudiced his substantial rights — that he was not sentenced based on the evidence alone. Appellant’s misconduct could have exposed him to seven years and six months of confinement. Trial defense counsel successfully negotiated a pretrial agreement which limited Appellant’s confinement exposure to the twelve-month maximum of a special court-martial. Appellant’s actual sentence was ten months of confinement, a bad-conduct discharge, and a reprimand. The uncontroverted evidence against Appellant, as admitted in his stipulation of fact, reveals that Appellant watched his wife attempt to commit suicide, took her to her home, left her there alone, and made no attempt to seek medical help. Moreover, Appellant admitted that on the day his wife was admitted to the hospital for this suicide attempt, he committed adultery with another airman. Despite a no-contact order, Appellant continued to commit adultery with the airman. He further admitted to stealing and snorting his wife’s Adderall prescription on multiple occasions. The only mitigating evidence consisted of unremarkable character letters from Appellant’s mother, grandmother, and a family friend, and sentencing testimony by his mother. Even if each statement Appellant takes issue with was obvious error, Appellant failed to establish that the weight of the evidence did not clearly support the adjudged and approved sentence. Therefore, Appellant failed to meet his burden of establishing plain error.
As Appellant was not prejudiced by the sentencing arguments, he cannot have been prejudiced by the military judge’s failure to interrupt the arguments or issue a curative instruction, or the failure of his trial defense counsel to object to the arguments. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (requiring that a defendant claiming ineffective assistance of counsel show that he was prejudiced by counsel’s deficient performance).
IV.
The judgment of the United States Air Force Court of Criminal Appeals is affirmed.