Chief Judge BAKER
delivered the opinion of the Court.
Appellant was tried by a general court-martial composed of members at Joint Base McGuire-Dix-Lakehurst, New Jersey. Appellant was convicted, contrary to his pleas, of one specification of engaging in sexual contact with a child who had not attained the age of twelve years and one specification of engaging in a sexual act with a child who had not attained the age of twelve years, both in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006). Appellant was sentenced to a dishonorable discharge, eight years of confinement, forfeiture of all pay and allowances, and re *247 duction to E-l. The convening authority approved the sentence. The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and the sentence. Appellant then petitioned this Court and was granted review on the following issue:
WHETHER THE AIR FORCE COURT ERRED IN FINDING TRIAL COUNSEL’S PRESENTENCING ARGUMENT WAS HARMLESS ERROR WHERE TRIAL COUNSEL INSINUATED THAT APPELLANT WILL COMMIT FUTURE ACTS OF CHILD MOLESTATION.
Like the CCA, we find that trial counsel’s sentencing argument, while improper, was not prejudicial and therefore affirm the findings of the CCA.
BACKGROUND
On New Year’s Eve of 2008, Appellant and his fiancée got into an argument while re-toning from a holiday visit to his family and she kicked him out of her house. Appellant called his friend and supervisor Master Sergeant (MSgt) KK and asked if he could stay with him for awhile. MSgt KK agreed and Appellant moved some belongings into his friend’s basement. MSgt KK was hosting a New Year’s Eve party that night and invited Appellant to attend. Near the end of the evening, Appellant wound up alone in the basement with MSgt KK’s two daughters, ten-year-old RK and seven-year-old EK. After playing video games together, Appellant and the two girls put on the Batman: The Dark Knight movie. Appellant and RK were lying side by side on the pull-out couch.
All three fell asleep while watching the movie. When RK woke sometime later, she got up and turned off the movie projector, awakening Appellant in the process. RK lay down again and fell back asleep, only to awaken when she felt Appellant’s hands on her stomach, under her t-shirt. Frightened, she lay still as his hands traveled up to her chest and began fondling her breasts. He then slid his hand down inside her pajama pants and underwear. He rubbed her vagina and penetrated her with his finger, causing her pain. Appellant fondled her breasts a second time and then moved his hand downward to touch her vagina again. RK lay still the entire time, too scared to speak. While Appellant’s hands were still on her, RK managed to get up off the couch and go upstairs. Too frightened to tell her father what had occurred, RK wrote him a note that read: “Daddy, The guy that moved in down stairs [sic] was toehing [sic] me in the wrong places.”
Late the following morning, Appellant moved his belongings out of MSgt KK’s home. Sometime after he had departed, the civilian police were called. Appellant was charged with one specification of engaging in sexual contact with a child who had not attained the age of twelve years and one specification of engaging in a sexual act with a child who had not attained the age of twelve years, both in violation of Article 120, UCMJ. At a trial before members, RK testified remotely regarding the events of that New Year’s Eve, testimony that had to be paused several times because RK began crying. The note she wrote to her father was admitted into evidence.
Members found Appellant guilty of both specifications. At sentencing, trial counsel requested that members impose a sentence of ten years of confinement, dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-l. Defense counsel asked that members impose a sentence of less than ten years, but did not request a specific number, simply asserting that: “The defense would suggest to you that a shorter prison sentence is more appropriate in this instance.”
During his sentencing argument, on rebuttal, trial counsel stated: “Now, the Defense Counsel said, ‘there’s no evidence before you that he’s ever done anything like this before.’ And there is no evidence before you. But think what we know, common sense, ways of the world, about child molesters.”[1] Defense *248 counsel objected to this statement and trial counsel asserted that “I’m just arguing ways of the world.” The military judge overruled the objection. In instructing the panel prior to sentencing deliberation, the military judge reminded the members that argument was not evidence and that the accused was to be sentenced only for the crimes for which he had been found guilty. However, he also told them it was appropriate for them to apply their “commonsense [sic] and knowledge of the ways of the world whether or not in your particular case that involves any implication suggested by counsel.” The military judge instructed the members that the maximum period of confinement was life without parole.[2]
The members sentenced Appellant to a dishonorable discharge, eight years of confinement, forfeiture of all pay and allowances, and reduction to E-l. The convening authority approved the sentence. Before the Air Force CCA, Appellant argued that trial counsel had unduly inflamed the passions of the members by improperly suggesting Appellant would commit future acts of child molestation. The CCA found trial counsel’s remarks went beyond the evidence of record and constituted error. However, it determined that, “[w]hen placed in the context of the total sentencing argument and the adjudged sentence” this error did not materially prejudice Appellant. The CCA upheld both the findings and the sentence.
DISCUSSION
Improper argument involves a question of law that this Court reviews de novo. United States v. Marsh, 70 M.J. 101, 106 (C.A.A.F.2011). “The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused.” United States v. Baer, 53 M.J. 235, 237 (C.A.A.F.2000). Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be “confident that [the appellant] was sentenced on the basis of the evidence alone.” United States v. Halpin, 71 M.J. 477, 480 (C.A.A.F.2013) (brackets in original) (internal quotation marks omitted).
The standard for determining prose-cutorial misconduct was established in Berger v. United States, in which the Supreme Court stated that trial counsel:
may prosecute with earnestness and vig- or.... But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Trial counsel is entitled “to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.” Baer, 53 M.J. at 237. However, the Rules for Courts-Martial (R.C.M.) and existing case law both establish that it is error for trial counsel to make arguments that “ ‘unduly ... inflame the passions or prejudices of the court members.’ ” United States v. Marsh, 70 M.J. 101, 102 (C.A.A.F.2011) (alteration in original) (quoting United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F.2007)); R.C.M. 919(b) Discussion.
*249 We agree with the CCA’s finding that the trial counsel’s sentencing argument was improper and see no reason to make a separate determination on this matter. By his own admission trial counsel’s statements were not derived from the evidence presented at trial. Moreover, in lieu of evidence, trial counsel appealed to members to apply their knowledge of the “ways of the world” to sentence Appellant based on a risk of recidivism through serial molestation.
However, prosecutorial miscondu'ct does not automatically require a new trial or the dismissal of the charges against the accused. Relief will be granted only if the trial counsel’s misconduct “actually impacted on a substantial right of an accused (i.e., resulted in prejudice).” Fletcher, 62 M.J. at 178 (internal quotation marks omitted). Reversal is appropriate when the trial counsel’s comments, taken as a whole, “were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone.” Halpin, 71 M.J. at 480 (alteration in original) (internal quotation marks omitted).
In Fletcher, this Court recommended balancing three factors to assess whether misconduct impacted the accused’s substantial rights and the integrity of his trial: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” 62 M.J. at 184. In Halpin, this Court extended the Fletcher test to improper sentencing argument. 71 M.J. at 480. In applying this test to the current case, we find that although the first two factors favor Appellant, the weight of the evidence supporting the sentence adjudged is such that we can be “confident that Appellant was sentenced on the basis of the evidence alone.” Id.

Severity of the Misconduct

R.C.M. 1001, governing presentenc-ing procedure, states that during argument, trial counsel “may refer to generally accepted sentencing philosophies” including “specific deterrence of misconduct by the accused.” R.C.M. 1001(g). Such sentencing theories also encompass protecting society from the wrongdoer and general deterrence, preventing others from committing similar offenses in the future. United States v. Ohrt, 28 M.J. 301, 305 (C.M.A.1989). Where trial counsel in this ease overstepped the bounds of proper argument was in requesting that members draw upon information not in evidence to make a specific conclusion about Appellant: that he was a serial child molester who had offended before and in theory would offend again. “Now, the Defense Counsel said, ‘there’s no evidence before you that he’s ever done anything like this before.’ And there is no evidence before you. But think what we know, common sense, ways of the world, about child molesters.” Though this comment comprises three sentences in eight pages of sentencing argument, one is hard pressed to imagine many statements .more damaging than the implication that someone who has been convicted of molesting a single child will go on to molest many more. Trial counsel’s insinuation that Appellant was necessarily guilty of additional offenses and would be a serial recidivist if not confined was both unsubstantiated and severe.

Curative Instructions

The CCA found that the military judge’s curative instructions remedied the impact of trial counsel’s improper comment. Wé disagree. If anything, he made things worse. The military judge overruled Appellant’s objection to trial counsel’s improperly urging members to employ their common sense and “knowledge of the ways of the world” to draw conclusions as to whether Appellant was a serial child molester. Then, during his instructions to the members, the military judge reiterated that it was appropriate for them to: “apply your commonsense [sic] and knowledge of the ways of the world whether or not in your particular ease that involves any implication suggested by counsel. Again, it is up to you to determine whether or not that comports with your sense of the ways of the world.” He then reminded members that the accused was to be sentenced only for the offense for which he had been found guilty. However, this was not suffi- *250 dent to offset the notion that it was acceptable for members, absent any facts in evidence, to consider their own “knowledge of the ways of the world” conclusions as to whether Appellant was or would be a serial child molester when determining an appropriate sentence.
Both trial counsel and the military judge urged members to rely upon their “knowledge of the ways of the world” in assessing trial counsel’s sentencing argument. There are two problems with the use of “ways of the world” in this context. First, members are supposed to adjudicate a sentence based on the evidence presented and the military judge’s instructions, which define, among other things, the potential confinement exposure of the defendant and relevant sentencing factors and philosophies. Nowhere does the Manual for Courts-Martial, United States (MCM) or this Court’s case law suggest that members are permitted to ignore this evidentiary requirement and replace it with their personal knowledge of the “ways of the world” to determine an appropriate sentence.
Second, whether or not a person convicted of a particular offense is more or less likely to offend again or become a serial recidivist is a question requiring expert testimony, empirical research, and scientific and psychological method, inquiry, and evidence. Recidivism is not a matter resolved through appeal to common sense or a member’s knowledge of “the ways of the world.” Moreover, where sexual offenses are concerned, especially those against children, such appeal is likely to invoke an emotional and stereotypical response, not necessarily an empirical one. Neither is there agreement on just what “the ways of the world” might reflect with respect to recidivism. According to a 1997 National Institute of Justice repoi’t, “[rjecidivism rates across studies are confounded by differences in legal guidelines and statutes among States, length of exposure time (i.e., time in the community, where the opportunity exists to reoffend), offender characteristics, treatment-related variables (including differential attrition rates, amount of treatment, and integrity of treatment program), amount and quality of posttreatment supervision, and many other factors.” Robert A. Prentky et al., National Institute of Justice Research Report, U.S. Dep’t of Justice, Child Sexual Molestation: Research Issues iv (1997).
The term “ways of the world” refers to court members’ evaluation of lay testimony, defenses, and witness credibility. See United States v. Rivera, 54 M.J. 489, 491 (C.A.A.F.2001) (witness credibility); United States v. Oakley, 11 C.M.A. 187, 191, 29 C.M.R. 3, 7 (1960) (Ferguson, J., concurring) (insanity defense); United States v. Wilson, 18 C.M.A. 400, 405, 40 C.M.R. 112, 117 (1969) (lay witness). The term can include the fact that “a single punch to the torso or head can kill or cause serious bodily injury,” Rivera, 54 M.J. at 491; or that a defendant recanted his confession after talking to a lawyer, United States v. Cuento, 60 M.J. 106, 111 (C.A.A.F.2004). It does not, however, include a likelihood that an accused used drugs given proof he had used them before, United States v. Cousins, 35 M.J. 70, 75 (C.A.A.F.1992), or the recidivism rates of child molesters.
As case law and the Military Judges’ Benchbook have long recognized, members are expected to use their common sense in assessing the credibility of testimony as well as other evidence presented at trial. See United States v. Russell, 47 M.J. 412, 413 (C.A.A.F.1998); United States v. Hargrove, 25 M.J. 68, 71 (C.M.A.1987); Dep’t of the Army, Pam. 27-9, Legal Services, Military Judges’ Benchbook ch. 2, § V, para. 2-5-12 (2010) (hereinafter Military Judges’ Benchbook). Whether it is useful rather than confusing to also instruct members to use their knowledge of “the ways of the world” to assess the credibility of evidence is a matter of discretion for the military judge. However, what military judges cannot do is invite members to substitute their understanding of the “ways of the world” for evidence or for the military judge’s instructions on sentencing. One person’s perception of the ways of the world might vary dramatically from another’s, based on education, experience, and personal bias. The phrase “com *251 mon sense” is sufficient, and more accurate, to convey the sort of personal knowledge members can rely upon when weighing evidence and formulating their decisions. Though language encouraging members to rely upon their knowledge of the “ways of the world” is present in the Military Judges’ Benchbook, e.g., eh. 2, § V, para. 2-5-12, we note that it was stricken from the 1984 version of the MCM and is not part of the current MCM. Compare MCM ch. XIII, para. 74.a. (1969 rev. ed.), with MCM pt. II, ch. IX, at II-134 (1984 ed.).
Given the above analysis we conclude that the military judge’s instructions were not sufficient to cure trial counsel’s improper argument.

Weight of Evidence Supporting Sentence

Though Fletcher recommended a balancing of all three factors, it did not assign a particular value to each or comment on whether they should be weighed equally. In Hatpin, this Court found that the third factor weighed so heavily in favor of the government that it could be fully confident the appellant was sentenced on the basis of evidence alone. 71 M.J. at 480. As in Hatpin, in this case the “weight of the evidence amply supports the sentence imposed by the panel.” Id. And, as in Hatpin, Appellant has failed to demonstrate he was not sentenced on the basis of evidence alone.
Trial counsel’s argument was improper and potentially harmful. As noted above, there are few labels as potentially damaging to a defendant than that of serial child molester. However, the test for prejudice under Hatpin is whether or not we can be “confident that Appellant was sentenced on the basis of the evidence alone.” 71 M.J. at 480. We are.
The military judge established that the maximum punishment for sexual contact with and sexual assault of a child under twelve years of age was life without parole. The Government requested ten years of confinement with a dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-l. Appellant requested that members adjudge a sentence of less than ten years— “[t]he defense would suggest to you that a shorter prison sentence is more appropriate in this instance” — but did not recommend a specific period of confinement. In addition, trial counsel’s improper comment was surrounded by powerful and proper sentencing argument. Trial counsel pointed out the many ways in which being a victim of sexual assault might impact the future of the ten-year-old victim. He also highlighted the betrayal inherent in the fact that RK was the daughter of Appellant’s supervisor and friend of ten years. In addition, defense counsel, in his own argument, repeatedly reminded members that there was no evidence Appellant had committed sexual assault in the past or that he would do so again.
When determining a sentence, members are allowed to consider all evidence properly introduced before findings as well as the proffered sentencing evidence. R.C.M. 1001(f)(2). Nothing Appellant presented in mitigation — letters from his pastor, his fian-cée, and other family members testifying to his good character and the stress he had been under due to the recent death of his father, and a brief unsworn statement in which he did not admit his guilt — was sufficient to mitigate the impact of then eleven-year-old RK’s tearful testimony or trial counsel’s admission of the actual note she wrote to her father the morning after the assault.
Most importantly, given that members adjudged an even lighter sentence than the Government requested and settled upon the period of confinement Appellant asked for— something less than ten years — we find no evidence of prejudice. We therefore are confident that Appellant was sentenced based on the evidence rather than improper argument presented. Thus, trial counsel’s argument, though improper, did not “materially prejudice! ] the substantial rights of the accused.” Baer, 53 M.J. at 237. Given this lack of any due process violation, we find Appellant is not entitled to relief.
CONCLUSION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. It should be noted and understood that this comment occurred in the context of additional comments by trial counsel regarding Appellant’s potential recidivism. During his initial sentencing argument, trial counsel made the following statements:
*248 [T]his sentencing case is about_the protection of young girls everywhere....
.... What [does] our common sense and knowledge of the ways of the world tell us about jail time? ... [W]hat we can be sure of is that every day he spends in jail will be one day less that [RK] doesn’t have to worry about him being out on the street and that no other girl can suffer the same fate.
.... [T]he Air Force will not tolerate child molesters ... we want to protect young girls from the same fate....
However, Appellant did not object to these statements. Therefore they are subject to plain error review. United States v. Fletcher, 62 M.J. 175, 179 (C.A.A.F.2005). However, because we find no prejudice in this case, with or without these additional statements, we need not address the predicate plain error question as to whether these statements amounted to obvious error.

. The military judge also instructed that the maximum punishment that could be adjudged included reduction to the grade of E-l, forfeiture of all pay and allowances, and a dishonorable discharge.