# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32546**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jeffrey A. HALSTEAD, JR.**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 29 January 2020

————————————

*Military Judge:* Joseph S. Imburgia (motions); Christopher M. Schumann.

*Approved sentence:* Bad-conduct discharge and confinement for 2 months. Sentence adjudged 1 August 2018 by SpCM convened at Andersen Air Force Base, Guam.

*For Appellant:* Captain M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

LEWIS, Judge:

At a special court-martial composed of officer members, Appellant pleaded guilty to two specifications of wrongful use of a controlled substance (methamphetamine and heroin), in violation of Article 112a, Uniform Code of Military

Justice (UCMJ), 10 U.S.C. § 912a.[1] The officer members sentenced Appellant to a bad-conduct discharge and confinement for two months. The convening authority approved the adjudged sentence.

Appellant raises one assignment of error that the trial counsel's sentencing argument was improper because it encouraged the members to impose a lengthier confinement term so Appellant could complete a rehabilitation program. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On Monday, 30 April 2018, Appellant was randomly selected to provide a urinalysis sample for inspection testing under the installation's urinalysis inspection testing program. *See generally* Mil. R. Evid. 313. The sample was collected without incident and forwarded to Tripler Army Medical Center's Forensic Toxicology Drug Testing Laboratory. The sample tested positive for methamphetamine at a level of 15,175 ng/mL, 15 times the Department of Defense (DoD) cutoff limit of 100 ng/mL. A medical review officer at Andersen Air Force Base (AFB), Guam, found no medical reason for the positive urinalysis. The Andersen AFB Drug Demand Program Manager notified an investigator from the Andersen AFB Joint Drug Enforcement Team (JDET) of the positive result. The JDET investigator and a special agent from the Air Force Office of Special Investigations brought Appellant in for a suspect interview. After being read his rights under Article 31, UCMJ, 10 U.S.C. § 831, Appellant waived his rights and agreed to answer questions.

Appellant admitted to the JDET investigator that he used methamphetamine the day before his urinalysis. Appellant explained that he found a small baggy on the floor at an off-base club the Saturday before his Monday urinalysis. Appellant recognized the "milky-colored crystal-like substance" as methamphetamine. Appellant suspected he had found methamphetamine from its color and texture and because its appearance was consistent with what he had seen while growing up in West Virginia. Appellant put the baggy in his pocket and forgot about it. The next day, Sunday, Appellant noticed the baggy was still in the pocket of his pants. Appellant placed the baggy on his dresser and left the house to do errands as he hoped the errands would distract him from his desire to use the drug. After his errands, Appellant "became weak" and poured the methamphetamine onto his dresser, shaped it into a line, and snorted most of it. For the next ten hours Appellant felt the effects of the drug.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Military Rules of Evidence, and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

He did not sleep on Sunday night at all. Appellant went to work on Monday and received his notification to provide a random urinalysis sample.

The JDET investigator was curious whether Appellant's methamphetamine use was the only time Appellant used illegal drugs during his five years of service. Upon further questioning, Appellant admitted that he used heroin multiple times at his prior assignment at Joint Base Elmendorf-Richardson, Alaska.

Appellant described for the JDET investigator how he obtained and used heroin. A few months after Appellant arrived in Alaska, in July 2013, Appellant met a tattoo artist. Appellant went to the tattoo artist's home. Appellant spent four nights there and smoked black-tar heroin on three of the four nights. The tattoo artist charged Appellant more for the tattoo he gave Appellant as compensation for the heroin Appellant used. A few months later, Appellant bought $150.00 worth of black-tar heroin from the tattoo artist and later smoked it while camping near Anchorage, Alaska.

Within two weeks of his interview with the JDET investigator, Appellant was referred to the Andersen AFB Alcohol and Drug Abuse Prevention and Treatment (ADAPT) program by his commander. By the time of his trial, Appellant was about halfway through a three-month outpatient treatment program. Upon completion of this program, Appellant was expected to transition to an aftercare program which generally required an additional three months to complete.

At trial, Appellant pleaded guilty to both specifications and selected officer members to determine his sentence. The military judge permitted both sides to make a brief opening statement to the members. In the Government's opening statement, trial counsel previewed her sentence recommendation:

> . . . [W]e'll be asking you to consider how a bad conduct discharge and two months of confinement out of the maximum of 12 months of confinement can help to preserve good order and discipline, can serve as an appropriate punishment for the crimes that he's committed, as well as to deter and rehabilitate [Appellant].

Trial defense counsel raised no objection to the Government's opening statement.

In the Defense's opening statement, the members were alerted that Appellant had been fighting a "private battle with addiction." Trial defense counsel concluded "you'll see that this particular case does not call for the punishment asked for by the government, namely two months confinement and a bad conduct discharge."

In the Government's sentencing case, the trial counsel called Dr. CO, an expert in forensic toxicology and pharmacology. Dr. CO described how methamphetamine and heroin operated within the body once ingested. Dr. CO provided her opinion that the nanogram level of Appellant's positive urinalysis for methamphetamine was "quite high." Dr. CO opined that for a non-habitual user the dosage taken could have been fatal.

In the Defense's sentencing case, Major (Maj) DM, the Andersen AFB ADAPT program manager, testified. Maj DM was qualified as an expert in clinical psychology and explained Appellant's progress in drug and alcohol abuse treatment. According to Maj DM, Appellant was progressing well in his treatment program with a fair to good prognosis. Maj DM explained Appellant faced several challenges and displayed several strengths as he progressed in his treatment program.

The first treatment challenge Appellant faced was a history of substance abuse. Maj DM was not asked to elaborate on the extent of Appellant's substance abuse history. Appellant later explained in his unsworn statement that by the age of 14 years he was using drugs on a daily basis. When Appellant reached age 15 heroin became his drug of choice and he dropped out of school.

Maj DM described two other challenges Appellant faced in his treatment: (1) a "lot of urges and cravings" to use, and (2) significant psychosocial stressors. On the other hand, Maj DM described Appellant's strengths as being committed to treatment, openness and honesty with his difficulties, his level of participation, and the coping skills he learned through treatment. Maj DM described continued care as important for Appellant to prevent a relapse.

Staff Sergeant (SSgt) DR, a certified drug and alcohol abuse counselor and noncommissioned officer-in-charge of the ADAPT program, also testified for the Defense. SSgt DR explained that Appellant's treatment program was for those who could maintain abstinence. SSgt DR met with Appellant countless times during his enrollment in the program. She described Appellant's attitude and participation as good and that Appellant was committed to treatment. On cross-examination, SSgt DR confirmed that Appellant's current diagnosis was "mild" opioid use disorder, and "moderate" alcohol use disorder, and that Appellant had no diagnosis related to methamphetamine.

Appellant provided the members both a written unsworn statement and similarly themed oral unsworn statement. Appellant described growing up in extreme poverty in West Virginia where "most everyone uses or is addicted to an illegal drug." Appellant stated the only thing that "saved [him] from dying" was the Mountaineer Challenge Academy, a military school run by the West Virginia National Guard. Through this school, Appellant quit using drugs "cold turkey" and earned his GED diploma. Appellant realized the only thing that

could save him from his "addiction" was the military lifestyle so he decided to join the Air Force. Appellant explained that he notified his recruiter about his prior drug use, but was told by the unnamed recruiter "you never used drugs" so Appellant never reported his prior drug use on his enlistment paperwork.[2]

Appellant asked the members not to adjudge a bad-conduct discharge as "[a]djudging one will virtually guarantee" that he would "never rehabilitate" as he believed he would be "barred from receiving treatment or any help whatsoever from the Veterans Administration [(VA)]." Appellant believed he needed the VA's "resources to ensure continuity of care" and urged, "Please do not deny me what I believe is my best shot at ensuring continued care" by adjudging a bad-conduct discharge. Appellant also told the members, "I know my days in the Air Force are numbered" as "I'm going to get involuntarily separated whether I want to or not."

Appellant then addressed confinement in his unsworn statement. Appellant wrote "I have a problem that needs treatment. If you adjudge confinement, I will leave right after the court-martial. I believe I will not be able to [complete] ADAPT." He requested the members see his crimes "for what they were—the relapses of an addict." He asked the members to "[p]lease adjudge a sentence that sets me up to continue treatment and reenter society."

In rebuttal, the Government offered a five-page affidavit of Ms. PM, the Chief of the Clemency, Corrections, and Officer Review division of the Air Force Legal Operations Agency. The affidavit described *inter alia* (1) confinement for less than 12 months is served in a local confinement facility on the installation or in a downtown civilian confinement facility; (2) most Air Force bases do not have a local confinement facility; and (3) DoD confinement facilities have available, voluntary drug and alcohol counseling. The military judge admitted this affidavit, over defense objection. The military judge found the affidavit was proper rebuttal to the Defense's effort to leave the court members with the impression that (1) Appellant needed continued ADAPT treatment and that treatment is the outcome sought; and (2) essentially any punishment would deprive him of that treatment. Appellant does not challenge the military judge's ruling on appeal.

At the beginning of her sentencing argument, trial counsel stated that "confinement" and a bad-conduct discharge were an appropriate sentence for Appellant. Initially, she did not specify the length of the confinement term. After describing the nature of the offenses, trial counsel noted it was "very positive"

---

[2] The military judge instructed the court members about Appellant's preservice drug use and his failure to disclose it on his enlistment documentation. They were instructed they must give due consideration to all matters in mitigation and extenuation but that Appellant must be sentenced only for the offenses of which he was found guilty.

that Appellant was in treatment now and trying to rehabilitate himself. She argued that "confinement in addition to punishment can be rehabilitative in nature" and pointed to the paragraph of Ms. PM's affidavit that "talks about rehabilitation services" in DoD confinement facilities. Trial counsel argued further that

> . . . contrary to [Appellant]'s belief that should confinement be adjudged that he will not be able to continue his treatment, this affidavit states that DoD confinement facilities are required to have their own rehabilitative, correctional treatment programs . . . . So should you find confinement be adjudged, there is no reason why [Appellant] couldn't continue his treatment program should he so choose.

> . . . Finally, confinement might actually be good for [Appellant] because it would force him, physically force him, to be away from these drugs, the alcohol, the potential for him to keep making these poor choices. It would force him to stay in one space and help him focus on his rehabilitative programs.

> So we initially recommended two months of confinement would be a reasonable sentence, but if his program takes longer than two months . . . they said he was half way through phase one but needing a phase two, then maybe they [sic] need to extend the confinement out to match his program to ensure that his treatment is fulfilled.

(Last alteration in original). Trial defense counsel raised no objection to this portion of the trial counsel's argument. The members sentenced Appellant to the same sentence the trial counsel previewed in her opening statement—a bad-conduct discharge and two months of confinement.

Approximately a month into his confinement sentence, Appellant received the staff judge advocate's recommendation (SJAR) and submitted his clemency matters. Appellant wrote to the convening authority, *inter alia*, that since he pleaded guilty "I have been serving confinement without incident at Andersen AFB and continuing my treatment with ADAPT." Appellant's defense counsel also wrote a letter to the convening authority as part of the clemency submission which raised for the first time that trial counsel's argument was improper.

Before this court, citing *Tapia v. United States*, 564 U.S. 319, 335 (2011), Appellant argues that "members are not permitted to impose or lengthen a confinement term to foster an accused's rehabilitation." Appellant invites us to compare the Government's sentencing argument in his case with the argument in our prior decision in *United States v. Williams*, No. ACM S32368, 2017 CCA LEXIS 329, at *6–7 (A.F. Ct. Crim. App. 11 May 2017) (unpub. op.). Appellant

acknowledges we found no error in *Williams* when the trial counsel argued the maximum confinement term was appropriate to "separate" the appellant from drugs but Appellant asserts the military judge committed plain error when he did not *sua sponte* address trial counsel's improper arguments. *See id.*

In response, the Government asserts there was no error as the trial counsel properly commented on the admitted evidence, including the rebuttal evidence, during sentencing argument. The Government notes the "most questionable" argument by trial counsel included the statement that "maybe" confinement needed to be extended "to match [Appellant's ADAPT] program to ensure that his treatment is fulfilled." The Government acknowledges this portion of the argument is "inartfully worded" but asserts even if there was error Appellant has not met his burden to show prejudice. The Government points to, *inter alia,* (1) the sentence imposed was identical to trial counsel's opening statement; (2) the military judge gave the members proper instructions; and (3) the questionable argument was not thematic or repeated. Finally, the Government argues this court can be confident that Appellant was sentenced on the evidence alone.

## II. DISCUSSION

### A. Law

Improper argument is a question of law we review de novo. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). When there is no objection at trial, we review the propriety of trial counsel's argument for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citation omitted). To prevail under a plain error analysis, Appellant must show that "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted).

Improper argument is one facet of prosecutorial misconduct. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017). Prosecutorial misconduct occurs when trial counsel oversteps the bound of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense. *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (citation and internal quotation marks omitted). Such conduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon. *Id.* at 160 (citation omitted).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *Frey*, 73 M.J. at 248 (quoting *United States v. Baer*, 53 M.J. 235, 237

(C.A.A.F. 2000)) (quotation marks omitted). Three factors guide our determination of the prejudicial effect of improper argument: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction. *Sewell,* 76 M.J. at 18 (citing *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)). In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident an appellant was sentenced based on the evidence alone. *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (citation and internal quotation marks omitted).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (citation and internal quotation omitted). "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *Halpin*, 71 M.J. at 479 (citation and quotation omitted).

## B. Analysis

### 1. Applicability of *Tapia v. United States*

Appellant, citing *Tapia*, asserts that "members are not permitted to impose or lengthen a confinement term to foster an accused's rehabilitation." The Government does not challenge this assertion. We are not as certain as Appellant that *Tapia* applies to sentencing in the military justice system.

In *Tapia*, the United States Supreme Court considered "whether the Sentencing Reform Act precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation" and held that it does. 564 U.S. at 321. Tapia argued the district court judge lengthened her prison term to make her eligible for the Bureau of Prison's 500 Hour Residential Drug Abuse Program and that this violated 18 U.S.C. § 3582(a), which instructed sentencing courts to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id.* at 322. The Court looked at the district judge's comments and concluded the length of Tapia's sentence may have been calculated to ensure she received certain rehabilitative services and that a sentencing court may not do that. *Id.* at 335.

The application of *Tapia* to the military justice system has not been the subject of significant appellate litigation in the more than eight years since the case was decided. The United States Court of Appeals for the Armed Forces

(CAAF) and our sister service courts have not cited *Tapia* in their decisions.[3] This leaves one unpublished decision of our court, *Williams*, which cited *Tapia* and then found it "inapposite" to the facts in Williams' case. 2017 CCA LEXIS 329, at *6. Nothing in *Williams* explicitly adopts the holding in *Tapia* to court-martial sentencing proceedings.

Two years before *Tapia* was decided, the United States Army Court of Criminal Appeals (ACCA) held a military judge sitting alone committed harmless error when he considered "lengthening an otherwise appropriate sentence to confinement in the hope appellant would undergo enforced alcohol treatment." *United States v. Flynn*, No. 20061309, 2008 CCA LEXIS 549, at *14 (A. Ct. Crim. App. 31 Oct. 2008) (unpub. op.). In a footnote, ACCA stated "consideration of additional incarceration as a means to provide educational and vocational training, or medical care is contrary to the federal sentencing guidelines for rehabilitation set forth in 18 U.S.C. § 3582 and 28 U.S.C. § 994(k)." *Id.* at *17, fn. 10. In the opinion, ACCA elaborated "[t]he potential for participation in a treatment program while confined is precisely the sort of variable that is not susceptible to proof at trial and generally should not be considered in arriving at an appropriate sentence." *Id.* at *17 (citing *United States v. Mamaluy*, 27 C.M.R. 176, 180 (C.M.A. 1959)).

Finally, if *Tapia* applies to court-martial sentencing, we would have to question the correctness of the military judge's instructions to the members:

> You should bear in mind that our society recognizes five principal reasons for the sentence of those who violate the law. They are rehabilitation of the wrongdoer, punishment of the wrongdoer, protection of society from the wrongdoer, preservation of good order and discipline in the military, and deterrence of the wrongdoer and those who know of his crimes and his sentence from committing the same or similar offenses. *The weight to be given any or all of these reasons, along with all other sentencing matters in this case, rests solely within your discretion.*

---

[3] Military appellate court decisions do reference the federal sentencing system but in different contexts from this assignment of error. For example, the CAAF found the Federal Sentencing Guidelines "instructive" in evaluating an Excessive Fines Clause challenge under the Eighth Amendment, U.S. CONST. amend. VIII. *United States v. Stebbins*, 61 M.J. 366, 373–74 (C.A.A.F. 2005). Similarly, the CAAF found "analogies to the other federal system of criminal justice are helpful" when evaluating Article 66, UCMJ, sentence appropriateness analysis. *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001).

(Emphasis added). We note the military judge's instructions in this case are modeled on the standard sentencing instructions in the *Military Judge's Benchbook*. Dept. of the Army Pamphlet 27–9 at 64 (10 Sep. 2014).

We may be faced with a future case where we need to make the decisions we highlight above to resolve an assigned error. Appellant's case does not require us to do so.[4] Instead, we will assume without deciding that the members were not permitted to impose or lengthen a confinement term solely to foster Appellant's ADAPT programs. We will also assume without deciding that trial counsel committed a clear or obvious error wherever she actually made such an argument.

### 2. Improper Argument

We address five points in trial counsel's sentencing argument including: (1) confinement might "be good" for Appellant because it would physically force him to be away from drugs and alcohol; (2) Ms. PM's affidavit listed required rehabilitative programs in DoD confinement facilities; (3) confinement "can be rehabilitative in nature" in addition to punishment; (4) confinement would "help" Appellant "focus on his rehabilitative programs;" and (5) "maybe" confinement needed to be extended "to match his program to ensure that his treatment is fulfilled."

First, we find proper the argument that confinement might "be good" for Appellant because it would physically force him to be away from drugs and alcohol. This argument showed how confinement could aid in specifically deterring Appellant from committing future drug offenses by giving him the time and space to avoid the temptation of drugs. This argument was particularly relevant because Appellant swore under oath that he "found" the methamphetamine on the floor of a bar, put it in his pocket and then forgot about it. Additionally, we note the similarity between this argument and the one in *Williams* where we found no error that confinement would "separate" the appellant from drugs. This argument does not suggest a connection with a drug and alcohol rehabilitation program.

---

[4] We considered and declined to order supplemental briefs from the parties on this matter so as to not delay appellate review. We note that the Military Justice Review Group's (MJRG) report contained a comparison of sentencing in the military justice system to the federal system at the time of Appellant's trial. *See* Office of the General Counsel, Dep't of Defense, *Report of the Military Justice Review Group Part I: UCMJ Recommendations*, at 503–30 (22 Dec. 2015), https://ogc.osd.mil/mjrg.html. The MJRG report does not address the applicability of *Tapia* and did not propose adding the language in 18 U.S.C. § 8532(a) to Article 56, UCMJ, 10 U.S.C. § 856.

Second, we find proper argument when trial counsel referenced Ms. PM's affidavit which listed what rehabilitative programs were required in DoD confinement facilities. This portion of the argument simply drew the members' attention to a portion of the Government's rebuttal evidence. We acknowledge that similar evidence was not offered in *Williams* and we mentioned that fact in our opinion. 2017 CCA LEXIS 329, at *7. However, in Appellant's case this type of evidence was admitted and Appellant does not challenge that ruling. Trial counsel merely used the evidence of record to partially refute the claim in Appellant's unsworn statement that he would "not be able" to complete ADAPT if confined. In this instance, trial counsel did not suggest a confinement term should be imposed or lengthened to promote rehabilitation. She merely pointed out that Appellant may not be denied an opportunity to voluntarily participate in an alcohol and drug abuse program if confined in a DoD facility. While it would be preferable for trial counsel to explicitly point out that her argument would only apply in DoD confinement facilities and to actually introduce rebuttal evidence that Andersen AFB had a local confinement facility, in the context of her entire argument, we find the argument proper.

Third, we find no clear or obvious error when trial counsel referenced that "confinement in addition to punishment can be rehabilitative in nature." Appellant made his ADAPT program and his later eligibility for similar VA programs the main justification for why he should not receive confinement or a bad-conduct discharge. Trial counsel merely pointed out that confinement, while punishment, could also serve a rehabilitative purpose for this Appellant. In the context of the preceding arguments discussed above, we find no clear or obvious error with this argument.

In reaching this conclusion, we considered *United States v. Holmes* where the CAAF found error when a military judge instructed court members that "military confinement facilities are corrective rather than punitive." 61 M.J. 148 (C.A.A.F. 2005) (mem.). The CAAF referenced "the inconsistency between [the given instruction and] the military judge's instruction that confinement is a form of authorized punishment." The CAAF cited Article 58(a), UCMJ, 10 U.S.C. § 858(a) and Rule for Courts-Martial (R.C.M.) 1003(b)(7). We do not believe *Holmes* controls here. *Holmes* involved an erroneous instruction and Appellant raises no concern with the instructions in his case. Additionally, the trial counsel never argued that confinement was just rehabilitative. Instead, trial counsel first mentioned that confinement was punishment then argued it could also be rehabilitative for Appellant. We do not read *Holmes* to require us to find this argument was clear or obvious error.

Fourth, we address trial counsel's argument that confinement would "help" Appellant "focus on his rehabilitative programs." We assume without deciding that this argument was clear or obvious error. Our concerns are two-fold. First,

there was no evidence presented at trial that Appellant was struggling with a lack of focus on his ADAPT program. Both Maj DM and SSgt DR emphasized that Appellant was committed to treatment and there was no concrete evidence of a relapse since he began his treatment. Second, whether Appellant would even be able to "focus" on his treatment may have depended entirely on whether he was confined in a DoD facility. As Ms. PM's affidavit noted, Appellant would "be confined in a local facility or sent downtown to a civilian confinement facility pursuant to a Memorandum of Agreement" if he received 12 months or less of confinement. There was no evidence to justify how Appellant could "focus" on his treatment if he was "sent downtown to a civilian confinement facility." We also note the trial counsel, court members, and military judge in Appellant's case all lacked authority to specify where Appellant would serve any adjudged confinement. *See* R.C.M. 1003(b)(7) (stating the place of confinement shall not be designated by the court-martial).

Fifth and finally, we reach trial counsel's most troublesome argument that "maybe" confinement needed to be extended "to match [Appellant's ADAPT] program to ensure that his treatment is fulfilled." We assume without deciding that this was clear or obvious error. Trial counsel may have been attempting to argue the sentencing principles of "rehabilitation of the wrongdoer" and "deterrence of the wrongdoer." She did not use those words. Instead, she cited a voluntary treatment program of undetermined length as the only justification for extending confinement. This is a notable step away from arguing that confinement is punishment but that Appellant could also participate in rehabilitation programs while there. We now turn to whether Appellant was prejudiced by the assumed clear or obvious errors.

### 3. Prejudice

Appellant bears the burden of showing the two assumed clear or obvious errors[5] in the trial counsel's argument resulted in material prejudice to his substantial rights. *See United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017). Using the three factors set out in *Fletcher* to guide our determination, we find trial counsel's comments were not so damaging that we cannot be confident that Appellant was sentenced on the evidence alone.

#### a. Severity of the Misconduct

We do not find the misconduct to be severe. The CAAF in *Fletcher* noted five indicators of severity—two of which are worthy of discussion in this case.

The first indicator is "the raw numbers—the instances of misconduct as compared to the overall length of the argument." 62 M.J. at 184. Trial counsel's

---

[5] The result would not change even if we assessed the cumulative impact of the five arguments described above.

sentencing argument was not long, only 89 lines across four pages in the transcript. We assumed clear or obvious error existed on only 6 of those lines. The raw numbers show the assumed errors were a small, but not insignificant, portion of the sentencing argument.

The second indicator from *Fletcher* is "whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the whole findings argument or the case as a whole." *Id.* This indicator warrants some adjustment as we are evaluating a sentencing argument where a rebuttal argument was not offered to the trial counsel by the military judge. Still, the six lines of assumed error were grouped together at the end of the argument, after two pages of argument mostly about the offenses. Also, the trial counsel delivered a short opening statement lasting 33 lines across three pages in the transcript where she previewed a sentencing recommendation and the rationale for it. The opening statement contained no allegations of misconduct and there are no other allegations of misconduct from the rest of Appellant's trial. The misconduct therefore was quite limited when considered in this broader context.

We also note the following additional considerations, acknowledging they are not squarely within the five *Fletcher* indicators. Trial defense counsel did not object to this portion of the argument unlike the defense counsel in *Fletcher*. When defense counsel first raised the issue in clemency, the addendum to the staff judge advocate's recommendation found the allegation of error to be without merit. Both indicate the misconduct allegation was nuanced and not glaringly obvious. Unlike the district court judge in *Tapia* or the military judge in *Flynn* who described why they were imposing confinement for purposes of a rehabilitation program, no court member indicated that Appellant's adjudged confinement was even related to the trial counsel's comments about the ADAPT program. Even in our review, we chose to assume error, rather than deciding error as we find it unnecessary to decide today whether *Tapia* applies to a court-martial sentencing argument. On the whole, we conclude this first factor weighs heavily against Appellant.

### b. Curative Measures by the Military Judge

We agree with Appellant there were no curative measures specifically taken by the military judge to address the assumed errors in trial counsel's argument. This factor weighs in Appellant's favor.

### c. Weight of the Evidence

Appellant would have us heavily weigh the strength of his sentencing case and discount the nature of his offenses. After full consideration of Appellant's service record and sentencing case, the weight of the evidence slightly favors the Government.

Appellant pleaded guilty as charged and the members listened to the audio recording of the inquiry between the military judge and Appellant during the sentencing proceedings. *See United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969). Appellant's illegal drug use occurred at his last two duty assignments and involved two substances which the Government's expert witness thoroughly described. Appellant's most recent drug use, involving methamphetamine, was alarming both in the amount he used and the proximity of his use to his military duties the next day. By his own admission, Appellant went to work with no sleep after feeling the methamphetamine's effect for ten hours. The dose he took was so high that the Government expert witness, Dr. CO, believed it could be fatal for a non-habitual user.

Appellant's service record was strong—particularly on his more recent performance reports. However, he was also rated average on one performance report. His former squadron commander, current flight commander, and others provided him character letters which were admitted into evidence. However, Appellant's former squadron commander's letter stated Appellant "can become a productive member of society following a successful rehabilitation program." Appellant has not shown that the members disregarded any of his sentencing evidence and relied instead on the alleged improper arguments to arrive at their confinement sentence.

### d. Conclusion

Trial counsel's comments, when taken as a whole, were not damaging. The vast majority of her argument focused on the offenses and the evidence. The comments had no impact on the most serious punishment adjudged—the bad-conduct discharge. In fact, Appellant argued against the bad-conduct discharge because of its effect on his eligibility for VA benefits and treatment. If this portion of the adjudged sentence tells us anything, it shows how seriously the members viewed the offenses. They adjudged the most severe punishment available to them knowing, from the military judge's instructions, that it would deprive Appellant of "all benefits administered by the Department of Veterans Affairs and the Air Force establishment."

Appellant claims trial counsel's "impermissible tactic clearly resonated with the members because, despite [Appellant]'s strong mitigation case, the members adjudged the exact sentence recommended by trial counsel." We disagree. As we detailed above, the trial counsel's actual sentence recommendation changed by the time of her argument. The members imposed the sentence the trial counsel previewed in her opening statement free of any reference to Appellant's ADAPT programs. They rejected her argument to confine Appellant for a term that would match the length of his current ADAPT program and his future aftercare program.

On the whole, we do not find trial counsel's lukewarm suggestions that "maybe" confinement should be extended to match Appellant's ADAPT program or that confinement would allow him to "focus" on his treatment, were so damaging that we cannot be confident the members sentenced Appellant on the evidence alone. Under these circumstances, we find the trial counsel's sentencing argument did not materially prejudice Appellant's substantial rights and does not warrant relief. *See Frey*, 73 M.J. at 248.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court