# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32691

————————————

## UNITED STATES
*Appellee*

v.

## Dante J. TORELLO
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 August 2022

————————————

*Military Judge*: Matthew P. Stoffel.

*Sentence:* Sentence adjudged 3 February 2021 by SpCM convened at Kadena Air Base, Japan. Sentence entered by military judge on 8 April 2021: Bad-conduct discharge, confinement for 4 months, and reduction to E-1.

*For Appellant:* Major Jenna M. Arroyo, USAF; Major Theresa L. Hilton, USAF.

*For Appellee*: Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and MEGINLEY, *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge KEY and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MEGINLEY, Judge:

A special court-martial comprised of a military judge convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of indecent recording and one specification of indecent distribution of a recording, both in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c.[1] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for four months, and reduction to E-1. The convening authority approved the sentence.

Appellant raises two assignments of error: (1) whether trial counsel engaged in prosecutorial misconduct by making improper sentencing arguments, and (2) whether Appellant's sentence is inappropriately severe. Finding no error that has materially prejudiced the substantial rights of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty service in December 2016, and at the time of his offenses, was stationed at Kadena Air Base, Japan. As part of a plea agreement, Appellant entered into a stipulation of fact. The information provided in the stipulation of fact and in Appellant's providence inquiry forms the basis for the following factual background.

In May 2019, Appellant met GK and they began a sexual relationship shortly thereafter.[2] On 2 August 2019, Senior Airman (SrA) SD held a birthday party in his dorm room. Appellant, GK, and SrA IC were among the attendees and each consumed a large amount of alcohol. At the end of the night, Appellant, GK, and SrA IC made their way back to Appellant's dorm room. The three were on a couch, with GK lying across the laps of Appellant and SrA IC and her head on Appellant's lap. GK and Appellant began kissing and Appellant recorded their kissing with his cell phone. Appellant then panned the camera around the room and recorded SrA IC performing oral sex on GK. According to the stipulation of fact, Appellant then utilized the Snapchat social media application to distribute the recording to a "groupchat" of 17 Airmen, including SrA IC.[3] GK did not consent to Appellant recording SrA IC performing oral sex

---

[1] Unless otherwise noted, references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] GK was an active duty member at the time.

[3] According to the stipulation of fact: "Snapchat is a social media platform in which individuals are able to take pictures and videos and send them to other Snapchat users.

on her. During his providence inquiry, Appellant informed the military judge that due to his level of intoxication, he did not remember the specifics of the video; however, he acknowledged he made a recording and distributed a recording of GK's private area without her consent, under circumstances in which GK had a reasonable expectation of privacy.

As part of its investigation, agents from the Air Force Office of Special Investigations (AFOSI) conducted cell phone extractions from the phones of at least 19 Airmen, including SrA IC, who may have received the video. Agents also conducted a search of Appellant's phone and sent his phone to the DoD Crime Center Cyber Forensics Laboratory for analysis; the video in question was never recovered, nor was there any indication it would ever be recovered.

According to the stipulation of fact, several of the Airmen who received the video would have testified they saw the video sent by Appellant. One of those Airmen, SrA AW, would have testified she heard GK tell Appellant "don't get my face in it," to which Appellant told her, "chill girl, I'm not recording." SrA AW also would have testified that GK's face was visible in the video. Another Airman, SrA CF, would have testified that while recording the video, Appellant appeared to be smiling and laughing.

Furthermore, Appellant stipulated that SrA AW would have testified that Appellant "told her that he was going to lie to [GK] about the recording of the video in question." Specifically, SrA AW would have testified that Appellant told her that he planned to tell GK that "SrA [IC] accidently answered a FaceTime call during the sexual activity."[4] Appellant also acknowledged that when AFOSI asked whether he had recorded any videos on the night in question, Appellant replied, "Not that I can honestly recall." However, Appellant also stipulated that other Airmen would have testified that he admitted to them that he had recorded a video on the night in question. GK became aware of the video 24 to 48 hours after it was sent out, when SrA AW and SrA CF told her what they viewed.

Appellant's case was initially referred to a general court-martial which, in addition to the charge and its two specifications before this court, included a charge and two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920. However, pursuant to Appellant's plea agreement, the

---

The videos/pictures automatically delete after the recipients view them." The stipulation further states: "A Snapchat groupchat is where multiple individuals are part of the same conversation group, and can send images and videos to multiple individuals simultaneously and communicate back and forth in the same message thread." SrA IC created this groupchat, which was entitled, "Alcoholics Anonymous." Appellant and GK did not know all the members in the groupchat.

[4] According to the stipulation of fact, FaceTime "is a video chat application."

convening authority agreed to withdraw and dismiss with prejudice the sexual assault charge and its two specifications. Further, the charge and its two specifications of indecent recording were also withdrawn from the general court-martial and referred to a special court-martial. There was no evidence from the record before this court that GK had been sexually assaulted.

## II. DISCUSSION

### A. Improper Argument

#### 1. Additional Background

Appellant asserts trial counsel committed prosecutorial misconduct when "she made arguments that were not reasonable inferences from the facts, mischaracterized the evidence, and argued alleged victim impact which was too attenuated to be attributed to [Appellant]." In support of his assignment of error, Appellant specifically asserts that trial counsel claimed that:

> (1) [Appellant] recorded [SrA IC] violating [GK]; (2) [Appellant] demonstrated a lack of rehabilitative potential because of his lack of remorse; and, (3) Kadena [AB] was the center of a spider web, such that wherever [GK] traveled to in the world, "she won't be free from the spider web that [Appellant]'s actions created that night."

Appellant argues he was materially prejudiced by trial counsel's improper arguments, given the "inflammatory nature of trial counsel's misconduct, and her blatant mischaracterization of the evidence at every turn," which Appellant claims "casts significant doubt on whether the sentence adjudged was based on the evidence alone."

In presentencing, GK provided written and oral unsworn statements to the court, which were consistent. In court, GK told the military judge, "What happened to me hurt when it happened and it still hurts today. After the incident, I hated going out in public. I didn't know who had seen these images of me and thought that everyone had seen them and was talking behind my back." GK also described being "distracted and worried" at work, and how hard it was to "cope with" Appellant's actions. She also stated she felt "isolated and alone," and since the incident, "had trouble trusting people in [her] life."

Trial counsel's sentencing argument spanned just under four transcript pages. At issue are the following parts of trial counsel's argument. The first regards trial counsel's reference to GK being "violated," when trial counsel argued,

> While [GK] lay in his lap, drunk, her face exposed, her vagina exposed, [Appellant] pulled out his smart phone and recorded,

4

> selfie style, while a fellow Airman *violated* her. He shattered her trust again, when instead of deleting that recording of her being *violated*, he took it and he sent it to 17 other people. . . .
>
> . . . .
>
> . . . Those 17 Airmen who received that video of her being *violated*, sooner or later they're going to leave this place.

(Emphasis added). Appellant argues trial counsel mischaracterized the evidence in order to portray Appellant "as a person who stood back, watched, and recorded as [SrA IC] sexually assaulted [GK]."

Appellant next asserts that trial counsel committed misconduct by, as Appellant characterizes it, arguing that Appellant "demonstrated a lack of rehabilitative potential through his lack of remorse." In relevant part, trial counsel stated during sentencing argument:

> Although he stood before you today and he pled guilty to his crimes, up until this point he's failed to take accountability for his actions. He lied, and he lied multiple times. He did not take accountability, and so we must forces [sic] him to take accountability. He didn't take accountability the night of the incident. He told the victim, who was drunk laying in his lap, that he wasn't recording her, and that was lie number one. He didn't take accountability when he spoke to the victim after the fact. He told [SrA AW] that they were going to lie to her and say that this was an accident, and that's what he did. . . . He told OSI that he did not recall any videos that were recorded. He stated this despite the fact that he was the one who recorded one of the videos.

Appellant believes the evidence adduced at his court-martial "amply demonstrated" he was remorseful for his offenses.

Finally, Appellant takes issue with this portion of trial counsel's argument:

> Kadena [AB] is like the center of a spider web. Those 17 Airmen who received that video of her being violated, sooner or later they're going to leave this place. And as they scatter to bases around the United States, or bases around the world, they're going to extend this string of the spider web. As long as [GK] runs a risk of running into one of those Airmen that saw that video, wherever she may go in the world, she won't be free from the spider web that [Appellant]'s actions created on that night.

Trial defense counsel did not object during trial counsel's sentencing argument. Having thoroughly reviewed the record, we are not persuaded by Appellant's arguments and find no relief is warranted.

**2. Law**

The issue of "[i]mproper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). However, if the defense does not object to a sentencing argument by trial counsel, we review the issue for plain error. *Id.* (citing *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). To establish plain error, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.* at 106 (citing *Erickson*, 65 M.J. at 223). Because "all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Three factors guide our determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (alteration, internal quotation marks, and citation omitted).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (internal quotation marks and citation omitted). "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *Halpin*, 71 M.J. at 479 (internal quotation marks and citation omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

"[E]ither party may comment on properly admitted unsworn victim statements" during presentencing arguments. *United States v. Tyler*, 81 M.J. 108, 113 (C.A.A.F. 2021). However, "a victim impact statement under [Rule for

Courts-Martial (R.C.M.)] 1001[(c)] does not allow a never-ending chain of causes and effects to be relayed to the sentencing authority." *United States v. King*, ACM 39583, 2021 CCA LEXIS 415, at *136 (A.F. Ct. Crim. App. 16 Aug. 2021) (unpub. op.) (internal quotation marks and citation omitted), *rev. granted*, 2022 CAAF LEXIS 227 (C.A.A.F. 22 Mar. 2022).[5]

### 3. Analysis

Because there was no objection by the Defense during trial counsel's argument, we analyze this issue under a plain error standard of review. We do not find error with trial counsel's comments related to Appellant's lack of rehabilitative potential or his lack of remorse, nor do we find error with trial counsel's "spider web" analogy. We do find error with trial counsel's use of the word "violated." However, for reasons explained below, we find that Appellant has failed to establish the second and third prongs to this assignment of error—plain or obvious error resulting in material prejudice to a substantial right.

Regarding Appellant's rehabilitative potential, Appellant claims that defense evidence showcased Appellant's "demonstrated remorse amongst his peers, strong work ethic and high character in the face of a pending court-martial"—and that trial counsel "deliberately mischaracterized the evidence." We disagree. Trial counsel was free to argue the evidence of the record and, with respect to Appellant's lack of rehabilitative potential through any perceived lack of remorse, trial counsel highlighted Appellant's behavior in the immediate aftermath of his crime—behavior from which reasonable inferences could be made that Appellant lacked remorse and avoided accountability.

Regarding Appellant's claim of prosecutorial misconduct regarding trial counsel's "spider web" comments, we find no error. GK was not part of the "groupchat" and did not know all of its members; thus, she did not know everyone who received the videos of her at issue. Trial counsel's articulation that those Airmen who watched the videos involving GK would essentially be taking the knowledge and memory of what they viewed with them when they left Kadena AB was a reasonable statement. Assuming GK were to stay in the Air Force, she would always encounter the possibility that a fellow Airman would recognize her from the video Appellant made and distributed. In other words, reasonable inferences could be made from GK's statements that she would always be exposed and vulnerable to Appellant's crimes, no matter where she went; trial counsel was free to argue these reasonable inferences. We therefore

---

[5] Previously, the rules regarding a victim's right to be reasonably heard were contained in R.C.M. 1001A, *Manual for Courts-Martial, United States* (2016 ed.). Those rules are now contained in R.C.M. 1001(c). *See* 2019 *MCM*, App. 15, at A15-18 ("R.C.M. 1001(c) is new and incorporates R.C.M. 1001A of the MCM (2016 edition).").

conclude Appellant has not demonstrated any error in trial counsel's argument, let alone plain or obvious error.

We agree with Appellant that a fair reading of trial counsel's argument supports the conclusion that trial counsel was arguing that GK had been sexually assaulted by SrA IC, despite the fact that there was no evidence of such before the court. We find the insinuation that Appellant allowed a sexual assault to occur on GK was not supported by the record, and therefore, we find error with this portion of trial counsel's argument.

Although we find error with Appellant's first claim as to trial counsel's reference to a sexual assault and that GK was "violated"—and even if we found error with the Appellant's second and third claims (regarding Appellant's lack of rehabilitative potential and comments related to the "spider web," respectively)—Appellant has failed to demonstrate any material prejudice, or that the error substantially influenced his adjudged sentence. *See United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citation omitted). In doing so, we consider the three *Fletcher* factors. The first *Fletcher* factor considers the severity of the misconduct. 62 M.J. at 184. On this matter, we note that the "lack of a defense objection is some measure of the minimal impact of a prosecutor's improper argument." *See United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (internal quotation marks and citation omitted). Based on the record, we would find that the comments with respect to the use of the word "violated" were significant, as the comments sought to portray Appellant was not intervening to stop a sexual assault, if not outright encouraging the commission of such an offense; we would find the other comments not as severe.

The second factor—the measures adopted to cure this misconduct—does not add much to the analysis, as this was a judge-alone sentencing case. Although the military judge listened to trial counsel's argument without interruption and did not make any comment regarding trial counsel's argument, he had no obligation to do so. *See United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citations omitted). Appellant argues that "[n]o measures were adopted by the court to cure trial counsel's misconduct, which implies that the military judge relied on trial counsel's improper arguments when deciding on a sentence." However, "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary." *Id.* (citation omitted). We will presume that the military judge was able to distinguish between proper and improper sentencing arguments. Further, Appellant failed to provide any evidence to rebut the presumption that the military judge followed the law and disregarded any improper sentencing argument, nor is there anything in the record indicating the military judge sentenced Appellant for the withdrawn and dismissed Article 120, UCMJ, charge and its specifications.

As to the third *Fletcher* factor, the weight of the evidence supporting the sentence, 62 M.J. at 184, we find this factor weighs in the Government's favor. The evidence in this case, primarily consisting of the stipulation and Appellant's providence inquiry, was strong and virtually uncontested. We find the facts and circumstances provide substantial justification to support the sentence, irrespective of trial counsel's argument. We conclude that the weight of the evidence supports the adjudged sentence. In conclusion, we find that Appellant has failed to meet his burden to demonstrate plain error, and after considering trial counsel's comments as a whole, we are confident that Appellant was sentenced based on the evidence alone. *See Halpin*, 71 M.J. at 480.

## B. Sentence Severity

### 1. Additional Background

As part of Appellant's plea agreement, the convening authority agreed to refer Appellant's case to a special court-marital, thereby, *inter alia*, limiting Appellant's term of confinement to 12 months and removing the possibility of a dishonorable discharge; there were no other limitations on the maximum punishment available.[6] Appellant now argues his sentence of four months' confinement and a bad-conduct discharge is "inappropriately severe given the nature of the offense, the matters offered in mitigation and extenuation, and [Appellant]'s demonstrated rehabilitative potential." Much of Appellant's argument focuses on the fact that he agreed to plead guilty, that his crimes were "a momentary lapse in judgment, which occurred when he was intoxicated," and that he saved the Government time, effort, and expense by pleading guilty. Appellant further notes that by pleading guilty, he essentially spared GK from having to testify.

As part of his presentencing matters, Appellant presented 17 character letters, including several letters from officers and senior enlisted leaders. Appellant also presented numerous certificates, awards and citations, and other miscellaneous documents. Finally, Appellant presented the military judge an oral unsworn statement in question-and-answer format with trial defense counsel, as well as a lengthy written unsworn statement, in which he apologized to GK.

---

[6] For his offense of indecent recording, Appellant received two months' confinement. For his offense of indecent distribution of a recording, Appellant received four months' confinement. For both offenses, Appellant agreed to a confinement range between two months and one year, with the terms of confinement to run concurrently. There were no other limitations as to the sentence that could be adjudged.

### 2. Law and Analysis

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Our authority to determine sentence appropriateness, "which reflects the unique history and attributes of the military justice system, includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Appellant had been in the Air Force for less than three years at the time he committed the offenses at issue; after those crimes, it took the Government 18 months to prosecute Appellant. The court acknowledges Appellant presented a strong mitigation case, and the Government on appeal concedes as much. We also recognize the role alcohol played in his crimes. However, we cannot disregard the matter in aggravation that Appellant distributed the video at issue to at least 17 people on a social media application. Appellant's actions, in the digital age, risked the possibility of an unending exploitation of GK insofar as the video may still exist or individuals may remember its contents.[7] We also cannot discount the humiliation and embarrassment GK was subjected to by Appellant's actions. Finally, Appellant faced up to 12 months in confinement, yet received only 4 months' confinement for his crimes. We are confident the military judge gave Appellant's mitigation and extenuation matters the due consideration they warranted.

We have considered Appellant, the nature and seriousness of his convicted offenses, and all matters contained in the record of trial, to include all matters Appellant submitted in his case in extenuation, mitigation, and clemency. We conclude the adjudged sentence, including four months of confinement and a bad-conduct discharge, is not inappropriately severe.

---

[7] The court acknowledges that no copy of any video from the night in question was ever recovered.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court