# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40159

————————————

### UNITED STATES
*Appellee*

v.

### Daesha R. HEARD
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 November 2022

————————————

*Military Judge:* Christopher D. James.

*Sentence:* Sentence adjudged 26 April 2021 by GCM convened at Grand Forks Air Force Base, North Dakota. Sentence entered by military judge on 21 June 2021: Bad-conduct discharge, confinement for 100 days, and reduction to E-1.

*For Appellant:* Major Spencer R. Nelson, USAF.

*For Appellee:* Major Deepa M. Patel, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MENDELSON, *Appellate Military Judges*.

Judge MENDELSON delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MENDELSON, Judge:

In accordance with Appellant's pleas and pursuant to a plea agreement, a general court-martial comprised of a military judge sitting alone convicted

Appellant of one specification of wrongful distribution of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a; one specification of making a false statement in the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6) and Article 134, UCMJ, 10 U.S.C. § 934; and one specification of making a false statement to a firearms dealer in violation of 18 U.S.C. § 924(a)(1)(A) and Article 134, UCMJ.[1] The court-martial sentenced Appellant to a bad-conduct discharge, 100 days' confinement, and reduction to the grade of E-1.[2] The convening authority took no action on the sentence.

Appellant personally raises a single issue on appeal pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): whether trial counsel engaged in improper sentencing argument.[3] We find no error materially prejudicial to Appellant's substantial rights occurred. Additionally, we consider another issue identified during this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), review: whether the entry of judgment (EoJ) contains a significant error with respect to Specification 1 of Charge II (false statement in the purchase of a firearm). We find the EoJ contains error because the summary of that offense cites a different statute than the one with which Appellant was charged and found guilty of violating. We exercise our authority under Rule for Courts-Martial (R.C.M.) 1111(c)(2) to correct the error in our decree.

## I. BACKGROUND

At the time of her offenses, Appellant was stationed at Grand Forks Air Force Base, North Dakota, as an installation entry controller and armorer in the security forces squadron. On 5 May 2020, Appellant purchased a Glock 22C .40-caliber handgun and a box of hollow point ammunition from a local licensed firearms dealer. She purchased both items for JT, a junior enlisted Airman,

---

[1] Unless otherwise noted, references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.). Pursuant to the plea agreement, two specifications of wrongful use of a controlled substance were withdrawn and dismissed with prejudice.

[2] For the offense of wrongful distribution of marijuana, Appellant received 100 days' confinement. For the offense of false statement in purchase of a firearm, Appellant received 75 days' confinement. For the offense of false statement to a firearms dealer, Appellant received 50 days' confinement. In accordance with the plea agreement, the military judge sentenced all terms of confinement to run concurrently.

[3] Appellant specifically raises the issue "whether trial counsel engaged in improper argument when he opened his sentencing argument with a primer on gun history and used it to argue, *inter alia*, that '[guns] can also be used for nefarious purposes, for criminal purposes, and to do harm' and 'the laws are in place for a reason'?" (Alteration in original).

who was under the legal age to purchase a firearm. At the time of the purchase, Appellant made a false statement on the required Bureau of Alcohol, Tobacco, Firearms, and Explosives form,[4] stating she was the actual buyer and was not acquiring the firearm on behalf of another person. Less than one month later, on 1 June 2020, JT used the Glock to shoot and kill NA, another junior enlisted Airman, and then killed himself with this same firearm.

In accordance with the plea agreement, Appellant entered into a stipulation of fact with the Government setting forth that although JT used the illegally purchased Glock to commit the murder-suicide, Appellant had no foreknowledge of JT's offense, she was not directly involved in JT's offense, and that JT's offense could not be used as evidence in aggravation under R.C.M. 1001(b)(4). After conducting an appropriate colloquy, asking Appellant to confirm each paragraph was true and she wished to admit it, the military judge admitted the stipulation of fact into evidence.

In presentencing, trial counsel moved, under R.C.M. 1001(c), to admit victim impact statements from the mother and father of deceased NA. Trial counsel acknowledged the statements were not admissible as aggravation evidence under R.C.M. 1001(b)(4), but argued the statements were instead admissible as victim impact statements because the murder of NA arose from the offenses Appellant committed in illegally purchasing the Glock for JT. After hearing arguments from trial and defense counsel, the military judge ruled the victim impact statements were inadmissible because the murder of NA by JT was too attenuated to be considered arising from Appellant's offenses.

After the military judge's ruling finding the victim impact statements inadmissible, Appellant made an unsworn statement. In her unsworn statement, Appellant stated she "never believed [JT] would hurt himself or anyone else" and that "[a]fter learning what he had done to [NA] and then himself, [she] was devastated." Appellant also expressed her "sincere condolences to [NA's] family."

During the Government's sentencing argument, trial counsel began by commenting on the country's history with firearms and the policy behind gun regulations.[5]

> Your Honor, this country has a long history with firearms and
> in fact was founded on one end of those of [sic] firearms in

---

[4] Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473, *Firearms Transaction Record* (October 2016).

[5] Appellant's offenses were referred after 1 January 2019. In our review, we found discrepancies in the hard copy of the transcript. Thus, all quoted language comes from the audio recording of the proceedings instead of the transcript.

rejecting the tyranny of England. It's a part of our culture, it's a part of our history, and they're used often in many different ways. They're used to protect us. They're used to defend the Constitution. They're used with our fellow Airmen when they go overseas, and when they go off to war.

They can also be used for nefarious purposes, for criminal purposes, and to do harm. That's why they are regulated, that's why there's [sic] rules, that's why the government has said the purchase of a firearm when you go to a licensed dealer must be the purchaser of that firearm. The regulation, the laws are in place for a reason. They're to ensure that the people purchasing firearms are eligible, and the ones that are actually going to own the firearm.

Trial counsel continued by commenting on Appellant's status as a security forces member:

When we look at this case, Your Honor, we have a security forces member, a certified entry controller and armorer, who walked into a licensed gun dealer in downtown Grand Forks, North Dakota, knowing that that Glock firearm was not for her, lied to that dealer, therefore bypassing these regulations, these rules, that the Government had put in place to ensure these firearms end up in the correct hands.

Towards the end of the Government's sentencing argument, trial counsel again referenced Appellant's status as a security forces member.

And I posit to you, that's not that difficult of a choice. It shouldn't be difficult for an Airman who wears this uniform to tell another Airman, no, I will not break the federal law for you. I will not acquire a firearm for you. This is a security forces member armorer, who has knowledge of firearms. It takes courage, Your Honor.

Defense counsel did not raise any objections. At the conclusion of trial counsel's argument, the military judge asked trial counsel to clarify whether the Government was arguing Appellant's status as a security forces member was a matter in aggravation.

[Military Judge]: A couple of points of clarification, trial counsel. You mentioned on multiple occasions that she is a security forces member. I assume you are not asking the court to enhance any punishment because of the fact that she is a security forces member.

4

> [Trial Counsel]: No, Your Honor. And absolutely by no means is her – the Government's contention is that this offense was not facilitated by means of her occupation or are not asking to aggravate the sentence because of her status. I would note to the court in her unsworn statement, my only comment on that is a comment on her unsworn statement that says she is a certified installation entry controller and armorer showing that she has knowledge of a firearm and would argue that as an armorer you know the importance of regulations regarding firearms.

During the Defense's sentencing argument, civilian defense counsel offered condolences to NA's family and stated "[w]e . . . are very saddened by the loss of life." Defense counsel also argued for the minimum confinement in light of Appellant having to carry the burden of knowing her actions resulted in the death of NA.

> It's heavy, but more importantly than the . . . bad-conduct discharge, the reality [is] that in a chain of events, how removed it may be, something she did resulted in a loss of life, not directly, but indirectly.

> That's something that she's going to carry [with her] the rest of her life. And that's something that's troubling to her. And that's punishment. I say all these things to give the court an appreciation from our perspective of the lesser of a need for confinement. We recognize that confinement is going to be a consequence, but we believe that the minimum confinement in this case is sufficient to meet the requirements of the statute and so we're asking the court to impose the minimum confinement.

In the Government's rebuttal argument, trial counsel responded to defense counsel's argument for the minimum confinement.

> Just one brief point, Your Honor. Defense counsel mentioned Airman Heard's remorse for the loss of life of [NA]. And he talked about that in context of that being punishment in [and] of itself.

> [Appellant] can talk to her mom about that that [sic] punishment. [NA] can't. [NA]'s mother will not be able to talk to her daughter about that loss of life. So in looking at punishment, the maximum sentence in this case before that plea agreement was 30 years, I'm not standing up here to tell you this is a case that warrants [Appellant] going to prison for 30 years, it's not. But in 30 years [NA's mother] still won't be able to talk to [NA]. And in four months she won't be able to either.

> So when we're looking at punishment while it may be that she might think about it, in four months, [NA's mother] still won't be able to talk to her daughter. So the punishment that is appropriate in this case with all things considered is four months in confinement, Your Honor. Thank you.

Defense counsel did not raise any objections. After trial counsel concluded rebuttal argument, the military judge clarified that he would not consider the comments as arguing victim impact:

> And I'll just state for the record that since you brought that up, I will put that in context of the argument that the defense counsel provided, not in a victim argument in the sense of [Article] 6b[, UCMJ].

## II. DISCUSSION

### A. Sentencing Argument

Appellant contends trial counsel's sentencing argument was improper because she implied Appellant should be punished for the fact the firearm Appellant illegally purchased was used to commit a murder, after conceding this fact was not admissible as aggravation evidence under R.C.M. 1001(b)(4) and after the military judge ruled the murder was too attenuated to be considered victim impact under R.C.M. 1001(c)(2)(B). The Government maintains trial counsel's argument was not improper because the comments regarding the dangers of guns and Appellant's status as a security forces member focused on Appellant's knowledge of the importance of firearm regulations, and did not draw any inferences to inadmissible facts. We are not persuaded by Appellant's argument and find no relief is warranted.

#### 1. Law

The issue of "[i]mproper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). However, if defense counsel do not object to a sentencing argument by trial counsel, we review the issue for plain error. *Id.* (citing *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). To establish plain error, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.* at 106 (citing *Erickson*, 65 M.J. at 223). Because "all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Three factors "guide our determination of the prejudicial effect of improper argument: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (alteration in original) (quoting *United States* v. *Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (alteration, internal quotation marks, and citation omitted).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (internal quotation marks and citation omitted). "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *Halpin*, 71 M.J. at 479 (internal quotation marks and citation omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted).

When analyzing allegations of improper sentencing argument in a judge-alone forum, we presume a "military judge is able to distinguish between proper and improper sentencing arguments." *Erickson*, 65 M.J. at 225.

**2. Analysis**

Because there was no objection during trial counsel's argument, we analyze this issue under a plain error standard of review. After closely examining trial counsel's argument, we find Appellant has failed to establish error, let alone plain or obvious error.

Appellant specifically argues that by commenting on the history of guns, and noting guns are sometimes used for nefarious or criminal purposes to do harm, trial counsel was implying Appellant should be punished for the murder of NA. Appellant's argument relies on one fleeting comment by trial counsel that in no way references the murder-suicide, much less implies Appellant should be punished for the murder-suicide. Rather, trial counsel's comments were made in the context of underscoring the importance of the federal gun control laws that Appellant violated, which is fair ground for sentencing argument.

Although not specifically raised by Appellant, we recognize trial counsel's rebuttal argument does reference the murder of NA in the context of determining the appropriate punishment. However, trial counsel's comments were made in response to defense counsel's argument for the minimum confinement set forth in the plea agreement, in light of Appellant having to carry the burden of knowing her actions resulted in the death of NA. The Defense invited the military judge to consider the death of NA in the context of determining the appropriate length of confinement. Because defense counsel argued the murder of NA should mitigate the length of confinement, the Defense invited a fair response from the Government. *See United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citations omitted) (noting that "[u]nder the 'invited response' or 'invited reply' doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense").

We find trial counsel's comments in rebuttal argument were within the bounds of a fair response. Moreover, the record is clear that the military judge only considered the rebuttal argument "in context of the argument that defense counsel provided," and expressly disavowed considering the argument as victim impact. In the stipulation of fact, the Government conceded the murder was not permissible aggravation evidence, and the military judge ruled during presentencing proceedings that the murder was too attenuated for its aftermath to be considered victim impact in Appellant's case. Under this context, we are convinced the military judge did not consider the murder as an aggravating factor in sentencing.[6]

We also note trial counsel's sentencing argument commented on Appellant's status as a security forces member, and specifically as a certified entry controller and armorer. This court has repeatedly held that an accused's duty position, without something more, cannot be considered as a matter in aggravation to increase a sentence. *See United States v. Bobby*, 61 M.J. 750 (A.F. Ct. Crim. App. 2005); *United States v. Collins*, 3 M.J. 518 (A.F.C.M.R. 1977), *aff'd*, 6 M.J. 256 (C.M.A. 1979). Here, we find no error because the context evinces trial counsel argued Appellant's status not as a matter in aggravation, but rather to demonstrate her familiarity with gun laws and regulations. Immediately following the argument, the military judge clarified, and trial counsel confirmed, the Government was "not asking to aggravate the sentence because of her status."

In summary, we find Appellant has not demonstrated any error in trial counsel's argument, let alone plain or obvious error. However, even if we were to assume that Appellant could demonstrate plain or obvious error, she has

---

[6] For this reason, the question whether the military judge erred by accepting a stipulation of fact that JT's offense could not be used as evidence in aggravation is moot.

failed to demonstrate any material prejudice or that the error substantially influenced her adjudged sentence. *See United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018).

The first *Fletcher* factor considers the severity of the misconduct. 62 M.J. at 184. On this matter, we note that the "lack of a defense objection is some measure of the minimal impact of a prosecutor's improper comment." *Gilley*, 56 M.J. at 123 (internal quotation marks and citation omitted). We would find that the comments were minor and relatively insignificant. Regarding the second *Fletcher* factor as to the curative measures taken, no curative instruction was necessary because it was a judge-alone forum, and military judges are presumed to know and follow the law, absent clear evidence to the contrary. *See United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (per curiam). Additionally, the military judge explicitly noted that he was not considering the argument for any improper purpose such as aggravation or victim impact. As to the third *Fletcher* factor, the weight of the evidence supporting the sentence, we find this factor weighs in the Government's favor. The evidence in this case was strong and uncontested, as it came from Appellant's own admissions to the military judge during her guilty plea inquiry and the stipulation of fact. We find the facts and circumstances provide substantial justification to support the sentence, irrespective of trial counsel's argument. Moreover, the comments Appellant alleges were improper relate only to the Charge II specifications involving the straw purchase of the firearm, and do not relate to the offense of wrongful distribution of marijuana, for which the military judge imposed the longest concurrent sentence of confinement.

In conclusion, we find that Appellant has failed to meet her burden to demonstrate plain error, and after considering trial counsel's comments as a whole, we are confident that Appellant was sentenced based on the evidence alone. *See Halpin*, 71 M.J. at 480.

**B. Entry of Judgment**

In our review of the findings and sentence as entered into the record under Article 60c, UCMJ, 10 U.S.C. § 860c, we note a significant error in the required contents of the EoJ. *See* R.C.M. 1111(b). Although the finding of guilty to Specification 1 of Charge II is entered correctly, the summary of that offense is not. In that regard, the summary for Specification 1 of Charge II identifies the wrong statute. As referred, Appellant was charged with violating 18 U.S.C. § 922(a)(6). Appellant pleaded and was found guilty of this offense as charged. The Statement of Trial Results—attached to the EoJ—correctly summarizes the statute at issue. However, the EoJ states in the summary of Specification 1 of Charge II that Appellant committed an offense in violation of 18 U.S.C. § 924(a)(1)(A), which is incorrect. An accurate summary for this offense as required by R.C.M. 1111(b)(1)(A) would reflect a violation of 18 U.S.C.

§ 922(a)(6). We employ our authority under R.C.M. 1111(c)(2) and modify the contents of the EoJ in our decree.

### III. CONCLUSION

The summary of Specification 1 of Charge II in the entry of judgment is modified by excepting "18 U.S.C. § 924(a)(1)(A)," and substituting therefor, "18 U.S.C. § 922(a)(6)." The findings and sentence as entered in the modified entry of judgment are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court