*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, KIRKBY, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Christopher R. JOHNSON**
Machinist's Mate Petty Officer Third Class (E-4), U.S. Navy
*Appellant*

**No. 202200125**

_____

Decided: 7 November 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Ryan J. Stormer (arraignment)
Andrea K. Lockhart (motions)[1]
Chad C. Temple (motions and trial)

Sentence adjudged 15 April 2022 by a general court-martial convened at Naval Base San Diego, California, consisting of officer and enlisted members for findings and a military judge alone for sentencing. Sentence in the Entry of Judgment: reduction to E-1, confinement for eighteen months, and a dishonorable discharge.

---

[1] Judge Lockhart heard a number of substantive motions on 17 February 2022 and issued rulings, which were later vacated by Judge Temple for reasons that were explained in *United States v. Painter*, 82 M.J. 806 (N-M. Ct. Crim. App. 2022).

For Appellant:
*LtCol Matthew E. Neely, USMC*

For Appellee:
*Lieutenant Commander Paul S. LaPlante (argued)*
*Lieutenant Colonel James A. Burkart, USMC (on brief)*
*Colonel Joseph M. Jennings, USMC (on brief)*

Senior Judge KISOR delivered the opinion of the Court, in which Judge DALY joined. Judge Kirkby filed a separate opinion concurring in the judgment.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

KISOR, Senior Judge:

A general court-martial composed of members with enlisted representation convicted Appellant of two specifications of sexual assault in violation of Article 120, UCMJ.[2] Appellant elected to be sentenced by the military judge.[3] As the Specifications had been charged under alternative theories of criminal liability, after the entry of findings, the military judge conditionally dismissed Specification 2, to become effective upon completion of final appellate review.[4] For Specification 1, the military judge sentenced Appellant to be reduced to paygrade E-1, to be confined for eighteen months, and to be discharged with a dishonorable discharge.[5]

---

[2] 10 U.S.C. § 920; R. at 673.

[3] R. at 676.

[4] R. at 675. Specification 1 alleged that Appellant penetrated the victim's vulva with his finger when "he knew or reasonably should have known she was asleep" while Specification 2 alleged that the same act was done "without consent." Charge Sheet.

[5] R. at 710.

Appellant raises five assignments of error before this Court:

**(1) Did the convening authority violate Appellant's Rule for Courts-Martial [R.C.M.] 707 speedy trial right by *sua sponte* excluding post hoc delay without finding good cause for the delay when the convening authority's failure to convene a court-martial properly caused the delay?**

**(2) Did the military judge abuse his discretion in excluding evidence that no more than a few months before the alleged offense, non-sexual physical contact triggered the complaining witness's memory of past sexual abuse when Appellant said he touched the complaining witness but never penetrated her vulva?**

**(3) Did the trial counsel commit prosecutorial misconduct by arguing in closing and rebuttal that no evidence demonstrating the complaining witness's past sexual trauma adversely impacted her ability to perceive and recall events accurately exists, and defense counsel's attacks on her credibility were consequently just "speculation"?**

**(4) Is the evidence factually sufficient to support Appellant's sexual assault conviction?**

**(5) Did the military judge err in denying the Defense's motion for a unanimous verdict?**

We find no prejudicial error and affirm.

# I. BACKGROUND

The general factual circumstances in this case (with a notable exception) are largely undisputed. On the evening of 5 January 2019, two Sailors (Petty Officer Golf and Mr. Mike), and two women (Ms. C.G. and Ms. Alpha) went out for the evening in Honolulu, Hawaii.[6] They ended up at "Bar 35" where they

---

[6] R. at 442-43. All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms. Ms. Alpha, Mr. Delta, and Mr. Mike were all United States Navy Sailors in January 2019 but were civilians by the time of trial in April 2022, and are not referred to here by military titles.

met up with two other people, Appellant and Mr. Delta.[7] Mr. Delta and Ms. Alpha had previously been stationed together, but Appellant did not know either Ms. C.G. or Ms. Alpha prior to that evening.[8] Appellant spent the evening drinking and flirting with Ms. Alpha at Bar 35 and then at another bar.[9] Appellant and Ms. Alpha danced together and at one point kissed on the dance floor.[10] At the end of the evening, Petty Officer Golf, who had not been drinking, drove the group back to Ms. C.G.'s house and then he took an Uber home as he had duty the next day.[11]

At Ms. C.G.'s house, Appellant followed Ms. Alpha up to the guest bedroom in an unsuccessful attempt to convince her to engage in sexual relations.[12] Appellant was heavily intoxicated, but Ms. Alpha was not. Appellant's brief summarizes the aftermath of that interaction as follows:

> After his drunken advances went nowhere with Ms. Alpha, Appellant sat down on the floor, fell asleep, and shortly after that began to vomit. Ms. Alpha led Appellant to the bathroom to finish vomiting and clean up. As Appellant cleaned up his vomit, he became further nauseated and vomited more. He then returned to Ms. Alpha's room to finish cleaning up the vomit. After he finished cleaning, Ms. Alpha sent him out of the room with the odorous trash and directions to "go downstairs."[13]

Rather than go downstairs, Appellant then wandered into the master bedroom where Ms. C.G. and her boyfriend, Mr. Mike, were sleeping. Ms. C.G. testified that she woke up with Appellant's fingers in her vagina (which she initially thought was Mr. Mike waking her up to have sex).[14] She exclaimed "what the fuck" and woke up Mr. Mike, telling him that someone else was in the room.[15] Appellant then went to the foot of the bed and crouched down and

---

[7] R. at 445.

[8] R. at 451-52, 497.

[9] R. at 447.

[10] R. at 446-47, 466.

[11] R. at 444-45.

[12] R. at 456.

[13] Appellant's Br. at 13, citing to various pages in the Record.

[14] R. at 492.

[15] R. at 492-93.

attempted to hide.[16] Mr. Mike stood up, and Appellant ran out of the room.[17] As it was dark, Mr. Mike did not recognize Appellant.[18] After coming downstairs, Mr. Mike directed Appellant and Mr. Delta (who was asleep on a couch) to leave the house, which they did.[19]

Some months later, Appellant was interviewed twice by the Naval Criminal Investigative Service [NCIS], on 30 October 2019 and 10 March 2020.[20] Those interviews were video recorded and admitted into evidence at trial.[21] After the second interview, Appellant wrote a letter of apology to Ms. C.G., which was delivered to Ms. C.G. by her Victims' Legal Counsel and later admitted into evidence at trial.[22]

The Charge was preferred against Appellant on 24 June 2021. After a short (11 day) period of defense-requested delay, an Article 32 hearing was held on 11 August 2021. Commander, Navy Region Southwest, referred the charge to a general court-martial convened by General Court-Martial Convening Order [GCMCO] 01-21. Appellant was arraigned on 15 October 2021, which was on day 99 of the then-operative 120-day R.C.M. 707 speedy trial clock. Appellant was never in pretrial confinement.

However, on 21 December 2021, the military judge ruled, in a different case also referred to GCMCO 01-21, that that general court-martial was improperly convened because the convening authority detailed the assistant staff judge advocate as a member.[23] Likewise, on 31 January 2022, the military judge also found Appellant's general court-martial to be improperly convened for the same reason, and vacated the referral and removed the case from the court's docket, but did not dismiss the underlying preferred charge and its specifications.

Ultimately, the charge in this case was re-referred to a general court-martial convened by GCMCO 01-22. As arraignment occurred on 11 February

---

[16] R. at 492.

[17] R. at 493, 512.

[18] R. at 512.

[19] R. at 523-24.

[20] R. at 550.

[21] R. at 534, 538; Pros. Ex. 3, 4.

[22] R. at 496, 545; Pros. Ex. 6.

[23] *United States v. Jaramillo*, findings of fact and conclusions of law.

2022, 233 days after preferral, the Defense moved to dismiss the Charge for a speedy trial violation under both R.C.M. 707 and the Sixth Amendment to the United States Constitution. The military judge denied the motion.[24] Central to the military judge's analysis was that the convening authority properly excluded 108 days from the speedy trial clock (15 October 2021 to 31 January 2022: the time between the initial arraignment on the defective convening order and the military judge's vacating the referral).

Prior to trial, Appellant also filed a motion under Mil. R. Evid. 412 to be allowed to present testimony: (1) that Ms. C.G. had been sexually assaulted in the past; and (2) that on one instance when Mr. Mike was lying down in a bed with her, the particular (non-sexual) position their bodies were in caused her to "kind of freak[ ] out" as it restricted her movement.[25] The military judge granted the motion in part and denied it in part, allowing the Defense to ask Ms. C.G. if she was sexually assaulted in the past (to provide the foundation for the Defense expert to opine as to her memory and perception).[26] The military judge, however, excluded the evidence of the interaction between Mr. Mike and Ms. C.G. in bed that caused her to become upset as not constitutionally required under Mil. R. Evid. 412 and also inadmissible under Mil. R. Evid. 403.[27]

At trial, the Defense called Major Charlie, who was recognized as an expert in the field of forensic and clinical psychology.[28] He testified about memory formation generally, and the effects of both alcohol and sexual trauma on memory and perception.[29] He conceded on cross-examination that he had no evidence that any past trauma that Ms. C.G. experienced was similar to what she testified about at Appellant's court-martial.[30]

---

[24] App. Ex. LXXIII.

[25] App. Ex. XLIII at 2.

[26] App. Ex. LXXII at 6.

[27] App. Ex. LXXII at 7-8.

[28] R. at 585.

[29] R. at 586-92.

[30] R. at 601.

Finally, Appellant filed a pretrial motion requesting that—notwithstanding the statutory requirements of Article 52, UCMJ—the military judge instruct the members that in order to convict Appellant they must reach a unanimous verdict.[31] The Military Judge denied the motion.[32]

## II. DISCUSSION

### A. Exclusion of 108 days by the convening authority was not improper under Rule for Courts-Martial 707.

Appellant contends, essentially, in his first assignment of error, that this Court should dismiss the charges because the convening authority improperly excluded 108 days from the R.C.M. 707 speedy trial clock prior to the second arraignment (the one under the second convening order.)[33] Appellant specifically does not assert a Sixth Amendment violation.[34]

### 1. Standards of review and applicable law.

This Court generally reviews speedy trial claims de novo.[35] However, this Court reviews whether the military judge properly granted excludable delay for an abuse of discretion.[36] Under R.C.M. 707, an accused must "be brought to trial within 120 days after . . . [p]referral of charges."[37] For purposes of **Rule 707**, an "accused is brought to trial . . . at the time of arraignment."[38] Ordinarily, when an accused is not under pretrial restraint and charges are dismissed, a new 120-day time period begins on the date of re-preferral.[39] "If charges are

---

[31] App. Ex. LII.

[32] R. at 142.

[33] Appellant's Br. at 21-37.

[34] Appellant's Reply Br. at 10.

[35] *See United States v. Guyton,* 82 M.J. 146 (C.A.A.F. 2022).

[36] *See id.* at 151.

[37] R.C.M. 707(a)(1).

[38] R.C.M. 707(b)(1).

[39] R.C.M. 707(b)(3)(A)(ii).

merely withdrawn and not subsequently dismissed, however, the R.C.M. 707 'speedy-trial clock continues to run.' "[40]

The Court of Appeals for the Armed forces has stated that applying the speedy trial provisions of R.C.M. 707(c) does not merely consist of calculating the passage of calendar days. The rule explicitly states that certain days "shall not count for [the] purpose of computing time."[41] For example, R.C.M. 707(c)(1) states that prior to referral, "[a]ll ... pretrial delays approved by a military judge or the convening authority shall be ... excluded" from the 120-day clock imposed by R.C.M. 707(a)(1). (After referral, only the military judge has the authority to approve pretrial days that are excluded from the 120-day clock. R.C.M. 707(c)(1)). The R.C.M. "does not preclude after-the-fact approval of a delay by" the military judge.[42]

The non-binding discussion to R.C.M. 707 states that "[t]he decision to grant or deny a reasonable delay is a matter within the sole discretion of the convening authority or a military judge. This decision should be based on the facts and circumstances then and there existing."[43] However, there must be good cause for the delay and the length of time requested must be reasonable based on the facts and circumstances of each case.[44]

Regarding a remedy, a dismissal for a R.C.M. 707 violation may be with or without prejudice. In selecting a remedy for a non-constitutional claim such as this, the Court considers, among other factors, (1) the seriousness of the offense; (2) the facts and circumstances of the case that led to the dismissal for a Rule 707 violation; (3) the impact of pre-prosecution on the administration of justice; and (4) prejudice to the accused.[45]

---

[40] *United States v. Leahr*, 73 M.J. 364, 367 (C.A.A.F. 2014) (quoting *United States v. Britton*, 26 M.J. 24, 26 (C.M.A. 1988)).

[41] R.C.M. 707(b)(1).

[42] *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997).

[43] R.C.M. 707(c)(1) Discussion.

[44] *Thompson*, 46 M.J. at 475 (stating the delay must "meet[ ] good-cause and reasonable-in-length standards").

[45] R.C.M. 707(d)(1).

*2. The timeline in this case.*

| Timeline | Date | R.C.M. 707 Clock |
|---|---|---|
| Charges Preferred: | 24 June 2021 | 0 Days |
| Defense Requested Excludable Delay: | 31 July 2021 – 11 August 2021 (11 Days) | 26 Days |
| Article 32 Hearing: | 11 August 2021 | 37 Days |
| Charges and Specifications Referred to GCMCO 01-21: | 1 October 2021 | 88 Days |
| Defense Requested Excludable Delay: | 12 October 2021 – 15 October 2021 (3 Days) | 99 Days |
| First Arraignment: | 15 October 2021 | Excluded |
| Ruling Vacating Referral to GCMCO 01-21 ICO *U.S. v. Jaramillo*: | 21 December 2021 | Excluded |
| Ruling Dismissing Referral to GCMCO 01-21 in this Case: | 31 January 2022 | Excluded |
| Convening Authority Grants Excludable Delay from 15 October 2021 – 31 January 2022: | 9 February 2022 | 109 Days |
| Charge and Specifications Referred to GCMCO 01-22: | 9 February 2022 | 109 Days |
| Arraignment: | 11 February 2022 | 111 Days |

*3. Analysis.*

The central issue here is whether the convening authority improperly excluded the time between 15 October 2021 and 31 January 2022 (108 days) from the R.C.M. 707 speedy trial clock. If this time were not excluded it would result in a lapse of well over 120 days between preferral and arraignment. The Defense contends that the convening authority did not have good cause for doing

9

so because that period of "delay was caused by, at best, stunning negligence" in the initial referral.[46]

The military judge examined this issue at trial. He found that "[t]he arraignment in *Johnson I* tolled the speedy trial clock and it did not begin to run again until the military judge found an improper referral."[47] After the referral was vacated, the convening authority then regained the ability to exclude delay. The military judge explained,

> Despite this excludable delay occurring post hoc, the Court finds no improper reason for doing so by the Convening Authority. There was no prohibition on the convening authority from continuing the ongoing litigation on the issue of the propriety of GCMCO #01-21 as the matter was unresolved in *Johnson I*. Even though the matter was resolved in favor of the accused in a separate court-martial, the government is not enjoined from raising and litigating the matter again in order to seek a more favorable outcome. Finally, the Court concludes there is no credible evidence of bad faith on the part of the government.[48]

Central to the Defense's reasoning here, is that once the military judge found GCMCO #01-21 to be fatally defective, the convening authority was somehow enjoined from proceeding in other cases referred to that convening order. We disagree. Nothing in the Uniform Code of Military Justice or the Rules for Courts-Martial permits a military judge detailed to preside over an individual case to strike down referrals collectively, or grant any other type of de facto class-wide relief in other unrelated cases before the court. The fact that an identical ruling was foreseeable on this issue does not deprive the Government of the ability to re-litigate the issue, because a military judge's ruling on a particular issue is not binding in other cases, even in the same circuit.

We find that the convening authority thus had good cause to exclude the time between 15 October 2021 to 31 January 2022. Further, the military judge did not abuse his discretion in agreeing with that action. We find that the military judge also properly tolled the R.C.M. 707 clock for the several relatively short periods of delay requested by the Defense totaling 14 days. Thus, we hold that there was no speedy trial violation because, at the time Appellant was re-

---

[46] Appellant's Br. at 27.

[47] App. Ex. LXXIII at 6.

[48] App. Ex. LXXIII at 6-7.

arraigned on 11 February 2022, it was on day 111 of the operative speedy trial clock, within the time permitted by R.C.M. 707.

**B. The military judge did not abuse his discretion in excluding evidence that, on a prior occasion, non-sexual physical contact with Mr. Mike triggered Ms. C.G.'s memory of past sexual abuse.**

Appellant contends that the military judge abused his discretion by excluding evidence that on one occasion Ms. C.G., when Mr. Mike touched her in bed, she recalled a past sexual assault, and therefore could have had memory or perception problems when Appellant touched her.[49] Appellant further contends that this ruling denied him the "fundamental right to challenge and discredit her testimony."[50]

*1. Standard of review.*

We review a military judge's decision to admit or exclude evidence for an abuse of discretion.[51] Evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence.[52] Materiality "is a multi-factored test looking at the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue."[53]

Evidence offered to prove an alleged victim engaged in other sexual behavior is, with limited exceptions, generally not admissible at a trial involving a sexual offense.[54] One of the rule's three exceptions is relevant here, that is "evidence the exclusion of which would violate the accused's constitutional rights."[55] "The constitutionally required exception encompasses an accused's Sixth Amendment right to confront and cross-examine the witnesses against

---

[49] Appellant's Br. at 39-40.

[50] Appellant's Br. at 39.

[51] *See United States v. McElhany*, 54 M.J. 120, 129 (C.A.A.F. 2000).

[52] Mil. R. Evid. 401.

[53] *Ellerbrock*, 70 M.J. at 318 (citations and internal quotation marks omitted).

[54] Mil. R. Evid. 412(a)(1). "Sexual behavior" includes "any sexual behavior not encompassed by the alleged offense." Mil. R. Evid. 412(d).

[55] Mil. R. Evid. 412(b)(3).

him, which includes the right 'to impeach, i.e., discredit the witness.'"[56] Evidence is admissible under this exception if it is relevant, material, and favorable to the defense, no matter how embarrassing it may be to the alleged victim.[57]

Any evidence introduced under the exceptions to Mil. R. Evid. 412 must also pass the Mil. R. Evid. 403 balancing test. Further, military judges receive wide discretion in conducting balancing under Mil. R. Evid. 403 where they reasonably describe the nature of the evidence and properly state the legal standard for making an admissibility determination.[58] To pass the Mil. R. Evid. 403 balancing test, the evidence's probative value must not be substantially outweighed by such dangers as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[59]

### 2. The ruling in this case.

The military judge allowed the defense to present evidence that Ms. C.G. had prior sexual trauma. This allowed the Defense to present its theory that Ms. C.G.'s perception and memory issues may have caused her to misperceive Appellant's touching her as a sexual assault.[60]

However, the military judge excluded the evidence that Ms. C.G. had a strong reaction to her interaction with Mr. Mike in the bed. First, the military judge concluded that the evidence of the interaction between Mr. Mike and Ms. C.G. was not constitutionally required under Mil. R. Evid. 412; and second, he concluded that the proffered evidence was inadmissible under Mil. R. Evid. 403.[61] The military judge explained the nature of the evidence and his reasoning in significant detail, finding that the circumstances of that interaction were not in any way relevant to the charge offenses.[62] The military judge found that

---

[56] *Ellerbrock*, 70 M.J. at 318 (quoting *Olden v. Kentucky*, 488 U.S. 227, 231 (1988)) (additional citations omitted).

[57] *United States v. Banker*, 60 M.J. 216, 222-23 (2004), *abrogated by United States v. Gaddis*, 70 M.J. 248, 256 (C.A.A.F. 2011).

[58] *See United States v. St. Jean,* 83 M.J. 109 (C.A.A.F. 2023).

[59] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see United States v. St. Jean,* 83 M.J. 109 (C.A.A.F. 2023).

[60] App. Ex. LXXII at 6; R. at 586.

[61] App. Ex. LXXII at 7.

[62] App. Ex. LXXII at 7.

there was no evidence of Appellant restricting the movement of Ms. C.G.'s legs nor any other similarity between the prior interaction with Mr. Mike and the incident of Appellant touching her.[63] We agree that the two events are markedly dissimilar. Thus, the military judge found that it was not constitutionally required under Mil R. Evid 412 and was also irrelevant.[64] Then after conducting the proper balancing test under Mil. R. Evid. 403, the military judge also concluded, "the probative value of the evidence is substantially outweighed by the danger of confusion of the issues, misleading the members, and considerations of waste of time."[65]

We find that the military judge did not abuse his discretion in excluding this evidence. We conclude that Ms. C.G.'s reaction to being touched in a non-sexual way while in bed does not constitute "other sexual behavior" within the meaning of Mil. R. Evid. 412. Nonetheless, it was unquestionably irrelevant and not probative of anything, and therefore inadmissible under Rules of Evidence 402(b) and 403. Further, it was not constitutionally required. The military judge conducted the proper balancing test under Mil. R. Evid. 403, and he sufficiently explained his analysis and reasoning. We find no abuse of discretion in excluding this evidence.

## C. Trial counsel's argument on findings was not improper.

Appellant next argues that trial counsel committed prosecutorial misconduct when he argued "nothing has been hidden from you" and that "you have the data" because trial counsel knew that the military judge had excluded evidence that a prior non-sexual interaction between Mr. Mike and Ms. C.G. had "triggered the complaining witness into recalling prior sexual abuse."[66] During his rebuttal argument, trial counsel also stated "there is no evidence here to support that she had any kind of false memory."[67] The Defense made no objection to these arguments at trial.[68]

---

[63] App. Ex. LXXII at 7.

[64] App. Ex. LXXII at 7

[65] App. Ex. LXXII at 8.

[66] Appellant's Br. at 52-53.

[67] R. at 655.

[68] R. at 645.

*1. Standard of review*

Improper argument is a question of law that appellate courts review de novo.[69] The test for improper argument is "whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused."[70] A failure to timely object to an improper argument constitutes forfeiture of the objection.[71] But even if the objection is forfeited, we will review an allegation of an improper argument for plain error.[72] Plain error is (1) error, (2) that is plain or obvious, and (3) that results in material prejudice to a substantial right of the accused.[73]

*2. The argument in this case.*

Appellant quotes these statements with incomplete context. Trial counsel's argument was:

> Members, you heard today that MM3 Johnson hid at the end of the bed. He hid in the corner of the room, that he hid his whereabouts concerning the day of the assault from NCIS, and he hid the fact he even knew of [Ms. C.G.]. Nothing has been hidden from you. You have it all. The defense expert said during his testimony that the more data you have, the more accurate your opinion and your vote can be. That's true for you as well. You have the data, the data that provides the only just conclusion in this case and that is that MM3 Johnson is guilty.[74]

The thrust of defense counsel's closing argument was that no contact had occurred between Appellant and Ms. C.G. at all, and that she was mistaken and was misremembering due to her prior sexual trauma. He stated:

> And [Major Charlie] explained that past trauma and sexual assault can impact how we see present situations. So even if she could have truly believed at that point that she had fingers in

---

[69] *See United States v. Witt*, 83 M.J. 282, 285 (C.A.A.F. 2023) *citing United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014).

[70] *See id.*

[71] R.C.M. 919(c).

[72] *See United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).

[73] *See Fletcher*, 62 M.J. at 179; *see also United States v. Rodriguez*, 60 M.J. 87, 88 (C.A.A.F. 2004).

[74] R. at 645.

her vagina, though no contact anywhere else, that doesn't mean
that was actually happening. Her past trauma made her believe
something that wasn't real, what wasn't happening.[75]

This opened the door to trial counsel's rebuttal argument that "there is no
evidence here to support that she had any kind of false memory." Trial coun-
sel's arguments were fair comment on the evidence admitted at trial, and the
fact that the military judge had excluded testimony about the unrelated non-
sexual incident between Mr. Mike and Ms. C.G. does not in any way render
trial counsel's comments improper in the context of this case.

We find no error here, let alone an error that rises to the level of plain error.

**D. The evidence adduced at trial is factually sufficient.**

Appellant contends that the evidence is factually insufficient to support a
conviction. In evaluating factual sufficiency for cases where the alleged mis-
conduct occurred before 2021, we determine "whether, after weighing the evi-
dence in the record of trial and making allowances for not having personally
observed the witnesses, [we] are . . . convinced of [Appellant's] guilt beyond a
reasonable doubt."[76] In conducting this unique appellate function under the
version of Article 66, UCMJ applicable to cases like this one which occurred in
2019, we take "a fresh, impartial look at the evidence," applying "neither a
presumption of innocence nor a presumption of guilt" to "make [our] own inde-
pendent determination as to whether the evidence constitutes proof of each
required element beyond a reasonable doubt."[77] Proof beyond a "[r]easonable
doubt, however, does not mean the evidence must be free from conflict."[78]

The court-martial members found Appellant guilty of sexually assaulting
Ms. C.G. by penetrating her vulva with his finger with an intent to arouse or
gratify his sexual desire, when he knew or should have known that she was
asleep.[79] To prove sexual assault, as charged in Specification 1, the Govern-
ment had to prove that: (1) Appellant committed a sexual act on Ms. C.G. by
causing penetration, however slight, of her vulva by his finger; (2) he did so in

---

[75] R. at 652.

[76] *Turner*, 25 M.J. at 325.

[77] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[78] *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

[79] The members also found Appellant guilty of Specification 2, which alleged the
same sexual act "without her consent" (as she was asleep) and the military judge dis-
missed Specification 2 prior to sentencing. R at 675.

order to arouse or gratify his sexual desire; and (3) he knew or reasonably should have known that Ms. C.G. was asleep.[80] The Government further had to prove that Appellant did not honestly and reasonably believe that he was committing a sexual act with someone other than Ms. C.G.[81]

Appellant contends that the fact that he prodigiously and repeatedly vomited is evidence that he was too drunk to form the specific intent to commit a sexual offense.[82] Appellant further contends that "a fair and reasonable hypothesis supports concluding that Appellant simply wandered into the wrong room of a dark, unfamiliar house and was tapping the complaining witness on the crotch area over her clothes while he was unsure of where he was or what he was doing."[83] We decline Appellant's invitation to reach this conclusion because we find it to be rather dubious.

Thus, having considered all the testimony and the evidence admitted at trial, we are convinced beyond a reasonable doubt that that Appellant, though drunk, was able to form the specific intent to gratify his sexual desires and that he penetrated Ms. C.G.'s vagina with his finger while he knew (or should have known) she was asleep. Appellant had been pursuing a sexual encounter with Ms. Alpha, which was ultimately unsuccessful. Ms. C.G. was in a dark room, in bed with her boyfriend. She had not invited Appellant into that room, nor had she interacted with him romantically at any point. Further, Appellant had the initial thought to try to hide when Ms. C.G. woke up, which shows some awareness both that he knew what he was doing, and that she had been asleep.

The evidence is factually sufficient to sustain the conviction.

## E. Military members panels are not required to reach a unanimous verdict.

Appellant challenges his conviction because the military judge did not instruct the members that their verdict must be unanimous.[84] Appellant cites to

---

[80] Article 120, UCMJ.

[81] R. at 625-26. *See* R.C.M. 916(j)(1).

[82] Appellant's Br. at 61.

[83] Appellant's Br. at 62.

[84] Appellant's Br. at 65. *See* R. at 656 (military judge's instructions that three-fourths of the members must concur in a guilty finding). Of course, we do not know whether the verdict in this case was unanimous or not.

the United States Supreme Court's opinion in *Ramos v. Louisiana* for the proposition that a jury trial must reach a unanimous verdict in order to convict.[85] The statute governing members' verdicts in courts-martial provides that the concurrence of three-fourths of the members is required for a finding of guilt in a noncapital case.[86] The Court of Appeals for the Armed Forces and this Court have already held that the Sixth Amendment's requirement for a unanimous verdict for serious offenses tried in state or civilian federal criminal courts does not apply to courts-martial.[87] Accordingly, we decline to set aside the findings and sentence in this case on that basis.

## III. CONCLUSION

After careful consideration of the record and briefs, as well as the excellent oral arguments of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[88]

The findings and sentence are **AFFIRMED**.

---

[85] *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020).

[86] Art. 52, UCMJ; 10 U.S.C. § 852.

[87] *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023); *United States v. Causey*, 82 M.J. 574 (N-M. Ct. Crim. App. 2022).

[88] Articles 59 & 66, UCMJ.

KIRKBY, Judge (concurring in the judgment):

I write separately to express my concern with the Government's seemingly cavalier approach to the selection of members under Article 25 of the Uniform Code of Military Justice [UCMJ], in this case. While the opinion correctly analyzes the Rule for Courts-Martial [R.C.M.] 707 speedy trial clock issue before us, the underlying problem was the inclusion of the Assistant Staff Judge Advocate to the Convening Authority on the original convening order. It is highly improper by any stretch of the imagination. While not a violation of the language of Article 25, UCMJ, it is without a doubt a violation of the spirit of justice the government is charged with overseeing in the military.

## I. DISCUSSION

As the majority opinion points out, the Government is not foreclosed from raising similar issues in different cases with the hope of different outcomes.[1] However, even hoping that the inclusion of the Assistant Staff Judge Advocate on the Convening Order would be permissible, except in extreme circumstances not present here, it raises questions of fundamental fairness.[2] Once the Government was put on notice that the military judge saw an issue with the convening order, the prosecution should have reviewed it, taken a step back and considered the greater purpose of military law—to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States.[3] The inclusion by the Convening Authority of the Assistant Staff Judge Advocate on the Convening Order objectively called into question the justice of this proceeding, undermined its efficiency by 108 days, and invited public scrutiny and criticism of the military justice process.

While I agree with both the opinion and the military judge that the 108 days of time could be excluded and no R.C.M. 707 violation occurred, convening authorities and staff judge advocates should be cognizant of the appearance of impropriety. Even though there is no technical violation of Article 25, UCMJ,

---

[1] Opinion at 9.

[2] At oral argument, the government appellate counsel acknowledged never having seen a situation where a Staff Judge Advocate was listed on the convening order.

[3] Preamble to the Manual for Courts-Martial, United States, Part I, para. 3.

there is a real threat of undermining military justice when members of a convening authority's legal staff are offered up as impartial panel members in any case.

## II. CONCLUSION

Accordingly, while I do not join the majority analysis in all respects, I concur with the judgment reached by the Court.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court